Diane DYER–NEELY and Stephanie P. Kimbrough, etc., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 83 C 5376.

United States District Court, N.D. Illinois, E.D.

March 5, 1984.

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., for plaintiffs.

James D. Montgomery, Acting Corp. Counsel, Marianne J. Parrillo, Michael Small, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Diane Dyer-Neely ("Dyer-Neely") and Stephanie Kimbrough ("Kimbrough") charge the City of Chicago ("City") and Mayor Harold Washington with violating Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794 ("Section 794"). Plaintiffs allege City's medical standards for police officers discriminate against persons who, though "handicapped" within the meaning of Section 794, can perform all the essential functions of a police officer.

Plaintiffs now seek to certify, under Fed. R.Civ.P. ("Rule") 23(b)(2),[1] two classes of persons described in First Amended Complaint ("Complaint") ¶ 7:

1. Dyer-Neely as the representative of:

All past, present or future applicants for employment with the Chicago Police Department who were or will be disqualified from employment on the basis of a history of malignant tumor or other handicap within the meaning of the Rehabilitation Act of 1973 and who were or will be capable of performing the essential functions of the jobs which they were being considered for; and

2. Kimbrough as the representative of:

All past, present and future employees of the Chicago Police Department who were or will be terminated from employment on the basis of a handicap within the meaning of the Rehabilitation Act of 1973 and who were or will be capable of

performing the essential functions of the jobs which they were engaged in.

For the reasons stated in this memorandum opinion and order, plaintiffs' motion for class certification is granted (in a slightly modified version).

### Facts [2]

In 1974 Dyer-Neely had a rhabdomyosarcoma surgically removed from her left side, received post operative x-ray and chemotherapy treatment. She is considered clinically cured. In 1981 she passed the written examination for employment as a police officer, scoring in the top 10%, and was given an oral interview. During a June 28, 1982 pre-employment physical examination, she was told her history of a malignant tumor required her employment application to be rejected. At all times Dyer-Neely was physically capable of performing the essential functions of a police officer's job.

In May 1981 Kimbrough passed the written examination for police officer employment. In July 1982 she passed the pre-employment physical examination and entered the Police Academy for training. In October 1982 she developed an arteriovenous malformation, which was removed surgically. On May 17, 1983 her physician released her to return to her employment. City required Kimbrough to undergo another physical examination and terminated her employment August 2, 1983. At all times after May 17, 1983 Kimbrough was able to perform the essential functions of a police officer's job.

City maintains minimum physical and medical standards embodied in written regulations for the position of police officer. It either refuses to hire or terminates people who do not conform to those standards, including plaintiffs and the proposed class members, regardless of their ability to per-

---

1. Consistently with conventional (though literally imprecise) usage, this opinion will:

   1. Speak of "certification" rather than, in the language of Rule 23(c), "[d]etermination ... whether [a] class action [is] to be maintained"; and

   2. employ the familiar "numerosity," "commonality," "typicality" and "adequacy of

representation" terminology to describe the four standards under Rule 23(a).

2. This statement is drawn from the Complaint. Of course it neither makes nor implies any factual findings.

form the essential functions of a police officer's job.

## Rule 23(a)

Every class action must satisfy Rule 23(a)'s four conditions:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

City's principal refrain on the current motion really consists of a set of variations on a single theme: There is an implied precondition to certification, that of defining the class with sufficient specificity.[3] In that respect City argues:

1. Because each individual was denied employment or terminated for a different medical reason, the cases are too fact-specific to allow a class action.

2. Some of the individuals cannot make valid claims because they have not been determined otherwise qualified as police officers.

■ As for the first of those contentions, all class members need not share precisely the same factual circumstances for the class to have the requisite definiteness. *See Stalling v. Califano*, 86 F.R.D. 140, 143 (N.D.Ill.1980). For one thing, City's activity itself defines the scope of the proposed class, by applying the medical standards to police department applicants

3. City raises this argument to three of Rule 23(a)'s requirements as well as to the Rule 23(b)(2) standard.

4. City's medical standards were adopted by regulation, so that the openness of the time period ("all past ....") presents no problem. That period is obviously to be limited to the time following the effective date of such regulations.

5. *Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 184 (N.D.Ill.1980) (joinder of over 100 persons impracticable as a general rule, citing Newberg, *Class Actions* (see n. 6)).

and police officers in their probationary period (Pl.Mem. 3 n. 1). And to complete the process of definition, class membership is established by objective criteria:

1. Were the medical standards applied to the individual?[4]

2. Was he or she otherwise qualified for the position?

*Alliance To End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir.1977); *Lewis v. Tully*, 96 F.R.D. 370, 376 (N.D.Ill.1982).

■ As for City's second objection, it is answered by the second objective criterion just stated. City's attempted reliance on *Williams v. Page*, 60 F.R.D. 29 (N.D.Ill. 1973) is unavailing. There, unlike here, the court decided plaintiff had identified no objective standard to define the putative class members. *Id.* at 35.

Once City's straw man of lack of definiteness is thus eliminated, application of the Section 23(a) tetralogy becomes easy. Those factors will be dealt with briefly in turn.

### 1. Numerosity

■ Based on City's answers in discovery, plaintiffs assert some 240 persons now fit within the two classes, a number to which future applicants and officers must be added. City counters both with its non-definability argument (so that any attempt at approximating numbers is allegedly speculative) and by saying the joinder of all claimants is not impracticable in any case.

Both cases[5] and commentators[6] sometimes quantify the "numerosity" require-

6. H. Newberg, *Class Actions* § 1105b, at 174 (1977) (class numbering 25 to 30 should have a reasonable chance of success on basis of number alone). As Professor Arthur Miller summarized his review of the cases through 1977 in *An Overview of Federal Class Actions: Past, Present and Future*, 4 Justice System J. 197, 203 (1978):

How do you decide whether there is "numerosity" for purposes of Rule 23(a)(1)? By and large, it turns out to be a question of numbers. Each year I read all of the published class action decisions in order to prepare the pocket parts to the Wright and Miller treatise. I have probably read seven hundred to one thousand opinions that deal with numerosity in some degree. The following guideline can

ment in a kind of bright-line way. But impracticality of joinder is not simply a numbers game. Here the putative plaintiffs are not only substantial in number,[7] but the class will continue to grow as City applies the policy to future applicants and officers. In combination those facts are clearly sufficient to render joinder impracticable and to satisfy the numerosity requirement. *William S. v. Gill*, 98 F.R.D. 463, 469 (N.D.Ill.1983) and authorities there cited.[8]

### 2. *Commonality*

At least the following are common to all class members:

    1. the factual issue whether City maintains the policy and

    2. the legal issue whether that policy violates Section 794.

City's argument that individual answers must be given to the question of who falls within the defined class does not defeat certification. All that is required is a single common issue of fact of law. *William S.*, 98 F.R.D. at 469.

### 3. *Typicality*

Each plaintiff's claim is typical of the class she seeks to represent. Each claim (1) arises from City's policy, which also generates the class claims, and (2) is based on the same legal theory as the class claims. *William S.*, 98 F.R.D. at 469. And "typicality" does not require disqualification to have come from the same medical problem. *De La Fuente v. Stokely Van Camp, Inc.*, 713 F.2d 225, 232–33 (7th Cir.1983).

### 4. *Adequacy of Representation*

City has not specifically challenged the adequacy of plaintiffs' representation.

In fact plaintiffs' attorneys are experienced in class action matters (Pl.Mem. 9) and plaintiffs' own interests are not antagonistic to those of other class members. Each has a great interest in ending the policy that precluded her employment. *William S.*, 98 F.R.D. at 470–71.

### *Rule 23(b)(2)*

In addition to meeting all the Rule 23(a) requirements, the class must qualify under Rule 23(b) as well. Plaintiffs propose a class under Rule 23(b)(2):

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

If City's policy, under which it has denied employment to class members, violates Section 794, injunction or declaratory relief to the class as a whole would be appropriate. *William S.*, 98 F.R.D. at 471. Plaintiffs' request for back pay does not preclude Rule 23(b)(2) certification, because back pay is incidental to the injunctive and declaratory relief. *Edmondson v. Simon*, 86 F.R.D. 375, 383 (N.D.Ill.1980); see *Washington v. Walker*, 75 F.R.D. 650, 654 (S.D. Ill.1977).

### *Conclusion*

Two plaintiff classes are defined as stated in the second paragraph of this opinion (as limited by n. 4). Plaintiffs' motion to certify the classes as so defined is granted.

---

7. In that respect only a reasonable estimate is needed. *Long v. Thornton Township High School District 205*, 82 F.R.D. 186, 189 (N.D.Ill. 1979).

8. If later in the proceedings the facts were to show a significantly different numerosity situation, decertification would be available.

be offered as a result: If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, discussed below, become relevant. I should add there are a few cases below twenty-five and above forty that do not conform to these general propositions.