**Donna HENDRICKS–ROBINSON, et al., Plaintiffs,**

v.

**EXCEL CORPORATION, Defendant.**

No. 94–3156.

United States District Court, C.D. Illinois, Springfield Division.

March 4, 1996.

Irving M. Friedman, Christina E. Giorgio, Lisa Margaret Gotkin, Katz Friedman Schur & Eagle, Chicago, IL, for Donna Hendricks–Robinson, Penny Moore and Teresa D. Westlake.

John P. Nicoara, Nicoara & Steagall, Peoria, IL, Michael B. Erp, Irving M. Friedman, Christina E. Giorgio, Katz Friedman Schur & Eagle, Chicago, IL, for Cynthia Peters.

Timothy A. Wolfe, Joseph E. Tilson, Brett G. Rawitz, Bates Meckler Bulger & Tilson, Chicago, IL, for Excel Corporation.

## OPINION

RICHARD MILLS, District Judge:

Excel Corporation's "medical layoff policy" is alleged to violate the ADA.

Plaintiffs request class certification.

Initially, the Court rejected that request.

Upon reconsideration, the Court reversed its prior ruling.

The class is certified.[1]

### I. Background

Excel is a national multi-plant operation engaged in the slaughter and processing of pork products. Plaintiffs were employed at Excel's Beardstown, Illinois, plant.

Most of Excel's employees perform highly repetitive production line jobs involving cutting, slicing, and packing. The Beardstown employees are represented by the United Food and Commercial Workers Union, Local 431 ("Union"). Excel and the Union had a collective bargaining agreement ("Agreement") in force from 1988 to March 14, 1995.

Apparently, in October of 1991, Excel implemented a "medical layoff program." As part of the program, Excel informed medically restricted employees that they were being laid off because of their medical condition. Most of the employees suffered from various degrees of nerve entrapment syndrome of the upper extremities. At the time of the layoff, Excel gave each of the medically restricted employees a "personal action record form" which provided:

> Effective 10–21–91 permanently restricted employees that have taken a plant tour for job placement, and have not been placed on a job within restrictions or to an available job will be placed on a medical layoff. Employees will be responsible for checking with Human Resources for jobs available during their medical layoff. If a job is available and employee refuses job, it will be considered a voluntary quit.

In October of 1992, Excel began mailing termination letters to each employee who had been on medical layoff for more than twelve months. As justification for the termination decision, Excel relied on Article XIII, § 7E of the Agreement which provides:

> An employee shall lose his seniority for the following reasons: * * * (E) Absent from work for any reason for a period of twelve (12) months.

Excel claimed that this provision gave it the right to terminate employees for any reason, including absence due to the medical layoff program.

Plaintiffs have instituted the present action pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiffs claim that Excel's medical layoff plan and subsequent termination policy was a pretext for illegal discrimination against disabled workers in violation of the ADA. Plaintiffs seek an order certifying a class comprised of fellow workers who were—or will be—adversely affected by Excel's program.

### II. Discussion

In the Court's order of July 3, 1995, we concluded that this matter was not appropriate for class certification. As will be discussed, however, upon reconsideration and

---

1. For the purposes of publication, this opinion is comprised of two prior independent Court orders. One order was entered by the Court on October 30, 1995; the second order was entered on January 10, 1996. The first order allowed Plaintiffs' motion for reconsideration regarding class certification. The second order denied Excel's motion under 28 U.S.C. § 1292(b) for appellate certification of the October 30 order (Excel sought to have the class certification issue appealed immediately to the U.S. Court of Appeals). The substance of the two prior orders is embodied within the instant opinion.

clarification of Plaintiffs' position, the Court now believes that this matter is indeed appropriate for class certification.

■ In order to maintain a class action pursuant to Fed.R.Civ.P. 23, a litigant must first meet " 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation. . . .' " *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).[2] "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Further, "the party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Id.*

■ When the court is determining whether to certify a class, the court is prohibited from considering the merits of the underlying claim. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). However, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' " accordingly, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372.

■ As noted, Plaintiffs initiate this cause of action under the provisions of the ADA. They propose the following class:

All Excel employees at the Beardstown plant whom Excel perceives to have permanent medical restrictions and who were placed on medical layoff pursuant to Excel's medical layoff policy regarding permanent restrictions and who have been or will be terminated allegedly pursuant to

Article XIII, Section 7E of the Collective Bargaining Agreement.

The Rule 23 elements, as they pertain to the particular class at issue, will be discussed in turn.

**A. Typicality & Commonality**

■ As noted recently by the Seventh Circuit:

the typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.

*Retired Chicago Police Ass'n,* 7 F.3d at 597. The commonality element is closely related to the typicality element. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). To satisfy the commonality requirement, there must be "questions of law and fact common to the class." *Id.* at 1017. However, "[t]he fact that there is some factual variation among the class grievances will not defeat a class action." *Id.* Indeed, "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* at 1018. As will become apparent, the typicality and commonality requirements are closely related in this case and essentially overlap; thus, the Court will discuss the requirements together.

In the Court's order of July 3, we concluded that Plaintiffs failed to satisfy the typicality requirement; thus, we declined to certify the prospective class. Our order focused primarily on the highly individualized nature of claims and defenses inherent in litigation under the ADA. Due to this highly individualized litigation, we were not convinced that

**2.** Specifically, Rule 23(a) provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of

the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Once the litigant meets the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subsections of 23(b). The instant class action qualifies under 23(b)(2), as will be discussed.

the instant matter was appropriate for class certification. However, based on Plaintiffs' motion to reconsider, we now tentatively agree with their position and will certify the proposed class.[3] To the extent the October order is inconsistent with our July 3 order, the October order obviously controls.

The Court's July 3 order was premised on the conclusion that Plaintiffs would attempt to support their allegations by focusing on the respective injuries and defenses applicable to each. It now appears, however, that Plaintiffs will not support their respective claims in that fashion. Instead, Plaintiffs are attacking Excel's medical layoff policy itself, claiming that the policy is violative of the ADA.[4] Since this action is based on the allegation of an unlawful policy, at this stage of the proceeding, we believe it is indeed appropriate for class certification. *See Alliance To End Repression v. Rochford,* 565 F.2d 975, 978 (7th Cir.1977) (The class " 'consists of all individuals who by virtue of defendants' policy are likely to be subjected to the illegal conduct.' "); *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) ("The major claims of the plaintiffs in the certified class are directed at the recruiting and disclosure practices of the appellants."); *Dyer–Neely v. City of Chicago,* 101 F.R.D. 83 (N.D.Ill.1984); *McDonald v. Bolger,* slip op., No. 80–C–4991 (N.D.Ill. Dec. 29, 1981) ("It is sufficient, to satisfy the requirements of [23(a)(3) ], that plaintiffs have been adversely affected by the same discriminatory practice and that their claims are based on the same legal theory.").

It appears that Excel does not believe that a class action is an appropriate manner to litigate claims under the ADA. The Court, of course, disagrees. We see no reason why a case which challenges a *policy* cannot proceed as a class action under the ADA. *See Wilson v. Pennsylvania State Police Dep't,* No. 94–CV–6547, 1995 WL 422750 (E.D.Pa.

July 17, 1995) (certifying a class of plaintiffs who challenge the Pennsylvania State Police Department's employment policy against applicant with poor eyesight as violative of the ADA).

For example, an employer could have a policy which reads: "All employees who are disabled and cannot perform the essential functions of their respective positions will be terminated." Such a policy, on its face, appears to violate the ADA because it fails to consider reasonable accommodations, which could possibly include a transfer to another position. Certainly, *all* employees adversely affected by such a policy could attack it in one proceeding, *i.e.,* a class action.

On that note, the Court interprets Plaintiffs' theory of liability as claiming either: (1) Excel's medical layoff policy on its face is violative of the ADA; or (2) although the policy on its face may not violate the ADA, a common general procedure (*i.e.,* common to all members of the class) utilized by Excel when *applying* its policy (*i.e.,* a procedure not apparent on the face of the policy) to its employees is violative of the ADA. If the Court is correct in its understanding of this matter, clearly this case can proceed as a class action—this is not a close call.

Excel's argument, on the other hand, appears to be based on an improper analysis of the issue involved in determining the appropriateness of class certification. Specifically, Excel claims that this matter should not proceed as a class action because the policy at issue required Excel to make individualized determinations and it did not provide for a "lock-step rigid treatment of all employees." That, however, is an argument for another day. Indeed, that argument concerns the substance of Plaintiffs' allegations, *i.e.,* whether Excel's policy on its face and/or in its common application violated the ADA, not whether this action can be *initiated* as a class action.

---

**3.** Due to an administrative oversight, at the time of our July 3 order the Court was unaware that Magistrate Judge Charles H. Evans granted Plaintiffs to July 18, 1995, to file a reply brief to Excel's response to Plaintiffs' first motion for class certification.

**4.** Plaintiffs' original motion for class certification arguably is based on the same theory of attacking Excel's medical layoff policy and not, as originally interpreted by the Court, on the individual physical injuries of each particular Plaintiff. Perhaps we initially construed Plaintiffs' motion too narrowly; regardless, their motion for reconsideration has clarified the matter.

Keep in mind, by tentatively certifying the class, the Court is *not* rendering any conclusions pertaining to the merits of this action. Once again, that is an issue for another day. The Court is merely concluding that if Plaintiffs' allegations are true, *i.e.*, if Excel's policy violates the ADA on its face and/or in its common application, this matter certainly can proceed as a class action.

The class here, generally speaking, would consist of all Excel employees who were adversely affected by the policy at issue as a result of their perceived permanent medical restrictions.[5] Since there will now be no need to consider the individual characteristics of each class member's injury, Plaintiffs' claims are typical of the class members' claims because they all arise from Excel's alleged unlawful policy.[6] Likewise, there will be no need to consider the defenses applicable to each particular Plaintiff and class member since Excel merely will be required to defend its medical layoff policy as it applies to its employees as a whole. And, of course, the class members' claims are all based on the same legal theory—whether Excel's policy on its face and/or in its common application violates the ADA.

Similarly, this matter satisfies the commonality requirement because Plaintiffs are putting Excel's medical layoff policy on trial and not their individual cases. The common question of law and fact at the heart of this case is whether Excel's policy on its face and/or its common application violates the employees' rights under the ADA. Thus, the Court concludes that the commonality element has also been established.

In summary, because Excel's medical layoff policy is on trial here—and not the individual claims of the prospective class members—this matter satisfies Rule 23's typicality and commonality requirements.[7]

## B. Numerosity

To date, Plaintiffs claim that there are at least 38 members of the potential class. Plaintiffs also claim that Excel continues to discriminate against employees that it perceives as disabled; thus, the class continues to grow.[8] Regardless of whether the class continues to grow, we conclude that 38 members is sufficient to satisfy the numerosity element such that joinder would be impracticable.

## C. Adequacy of Representation

■ The final element of Rule 23 requires that the representative plaintiffs fairly and adequately represent the class. *Rosario*, 963 F.2d at 1018. "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* Here, the representative Plaintiffs' interests parallel those of the class. Specifically, all were terminated or are to be terminated pursuant to the same policy that Plaintiffs allege is violative of the ADA. Since there does not appear to be any antagonistic or conflicting claims, Plaintiffs have satisfied this element also.

**5.** Although Plaintiffs may have technically received "permanent medical restrictions," Excel could have "perceived" such restrictions as more severe and more limiting than they actually were.

**6.** Of course, as Plaintiffs acknowledge, if the Court finds Excel's policy violative of the ADA, the individual class members bear the burden of demonstrating their right to recovery.

**7.** Excel argues that Plaintiffs cannot represent a class of employees with "perceived disabilities" because they each had a substantial limiting impairment as defined by § 12102(2)(A), and not a "perceived disability" under § 12102(2)(C). We disagree with Excel's interpretation of Plaintiffs' position. Although Plaintiffs may have been suffering from various degrees of nerve entrapment syndrome and all received permanent medical restrictions, this does not mean that they were disabled for § 12102(2)(A) purposes. Indeed, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one" under § 12102(2)(A). *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995). Plaintiffs may have been disqualified from certain jobs; however, if, as a result of their permanent medical restrictions, Excel *perceived* or *regarded* them as being disqualified from *all* positions, then perhaps Plaintiffs have a legitimate claim under the ADA. Accordingly, we do not interpret Plaintiffs' original motion for class certification and their motion for reconsideration as advancing inconsistent allegations.

**8.** Excel counters this argument claiming that it modified its medical layoff policy as of March 1995; thus, the class cannot possibly increase.

672

### D. Rule 23(b)(2)

Finally, once the four prerequisites under Rule 23(a) are satisfied, the potential class must also satisfy at least one provision of Rule 23(b). *Rosario,* 963 F.2d at 1017. Here, Plaintiffs rely on subdivision (2) of Rule 23(b). This subdivision provides for class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Generally, Rule 23(b)(2) has been interpreted to mean that "the party opposing the class must have acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." *Buycks–Roberson v. Citibank Fed. Sav. Bank,* No. 94–C–4094, 1995 WL 399006, *10, LEXIS 9342, *34 (N.D.Ill. June 30, 1995) (quoting, *Edmondson v. Simon,* 86 F.R.D. 375, 382–83 (N.D.Ill.1980)).

In the instant matter, Plaintiffs claim that they and all class members were adversely affected by Excel's medical layoff policy. Plaintiffs seek a declaration that Excel's policy is discriminatory under the ADA and injunctive relief requiring Excel to fashion a non-discriminatory policy and to apply such policy to the class. Thus, it appears Plaintiffs satisfy the requirements of Rule 23(b)(2).

### III. Conclusion

Based on the preceding discussion, the Court concludes this matter is appropriate for class certification as defined by Plaintiffs.

Initially, we misconstrued Plaintiffs' allegations by mistakenly focusing on the individual characteristics associated with each Plaintiff's injury and the similarly particularized potential defenses applicable to each. However, it now appears clear to the Court that Plaintiffs are attacking Excel's policy itself, and not basing their claims on the particular facts underlying their individual cases.

Such an attack on the face or the common application of a policy as violative of the ADA is appropriate for class certification under Rule 23. However, as the action progresses, if it becomes clear that Plaintiffs are actually trying their individual cases and not the policy itself, the Court will not hesitate to decertify the class and dismiss the case.

Class Certified.

So Ordered.