**Jose RUIZ and Emily Ruiz, Plaintiffs,**

v.

**STEWART ASSOCIATES, INCORPORATED and Meadows Credit Union, Defendants.**

No. 95 C 3714.

United States District Court,
N.D. Illinois,
Eastern Division.

June 17, 1996.

Daniel Edelman and James O. Latturner (Edelman & Combs), Chicago, IL, representing Plaintiffs.

Leann Pedersen Pope and Andrew D. James (Burke, Warren & MacKay), Chicago, IL, representing Stewart Associates.

## *MEMORANDUM OPINION AND ORDER*

KEYS, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs' Amended Motion for Class Certification Against SAI, pursuant to Federal Rule of Civil Procedure 23. For the following reasons, Plaintiffs' motion is denied.[1]

### *BACKGROUND*

Defendant Meadows Credit Union ("Meadows") is a federal credit union which makes car loans to its members. Defendant Stewart Associates Incorporated ("SAI") acts as an agent for American Security Insurance Company, which provides collateral protection insurance, also known as force placed insurance, to credit unions.

Contracts that govern vehicle purchase financing routinely include provisions for force placed insurance. Such provisions require the borrower to insure the vehicle against

loss or damage; if, however, the borrower fails to maintain the requisite insurance, the contract's terms permit the lender to insure the vehicle and then charge the borrower for the cost of that insurance.

In approximately 1986, SAI arranged collateral protection insurance coverage for Meadows. Meadows' stated purpose for procuring this insurance was to allow itself the option of protecting its interest in vehicles pledged as loan collateral. SAI also provided administrative services to Meadows, which included monitoring Meadows' members' maintenance of the required vehicle insurance, force placing insurance for Meadows, and corresponding with members regarding force placed insurance.

Plaintiffs, Jose Ruiz and Emily Ruiz, obtained a car loan from Meadows on March 10, 1989. The terms of the contract provided in pertinent part that, the borrower agreed:

> to insure the Collateral for its full value against loss and damage.... If I do not insure the Collateral, you can insure it ... and may treat the cost of insurance as a further extension of credit or may demand that I repay you immediately for all payments you may incur in obtaining such insurance.

(Plaintiffs' Amended Motion for Class Certification Against SAI [Pls.' Am.Mot.], at App. A.) On four separate occasions between 1989 and 1991, SAI, on Meadows' behalf, force placed insurance on Plaintiffs' car. It is Plaintiffs' position that the force placed insurance was unnecessary and included charges not authorized in the credit agreement.

On June 26, 1995, Plaintiffs filed a three count Complaint alleging that: Meadows breached its contracts with consumers (Count I); Meadows and SAI violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count II); and SAI engaged in a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by conducting

---

**1.** Plaintiffs' Motion to Compel Discovery from Stewart Associates, Incorporated is also denied, as moot.

or participating in Meadows' affairs (Count III).[2]

Plaintiffs proposed two separate class certifications: Class A, consisting of all persons who were charged (or had an outstanding charge or paid a charge), for force placed insurance, by Meadows, during the ten years prior to the filing of the Complaint; and Class B, consisting of all persons charged (or had an outstanding charge or paid a charge), for force placed insurance, by SAI, during the ten years prior to the filing of the Complaint.[3] Plaintiffs, on behalf of Class A, entered into a settlement agreement with Meadows on May 10, 1996.[4] Thus, only Counts II and III remain, against SAI. Before the Court is a motion for class certification of proposed Class B.

## DISCUSSION

### A. *Standard for Class Certification*

■ There is broad judicial discretion in determining whether to allow the certification of a class action. *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler,* 837 F.2d 775, 781 (7th Cir.1988) (certification decision is committed to the sound discretion of the court); *McGarvey v. Citibank,* No. 95 C 123, 1995 WL 404866, at *2 (N.D.Ill. July 5, 1995); *see also* 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1785 (1986) at 119. Failure to meet any one of the Rule 23 requirements precludes certification. *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980). The burden of showing that *all* of the demanding requirements of Rule 23 have been met, thereby demonstrating that certification is proper, rests with the plaintiff. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar,* 748 F.2d 1177,

1184 (7th Cir.1984); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986).

Rule 23 establishes a two-step procedure to determine whether a class action is appropriate. Initially, the preliminary requirements set forth in Rule 23(a) must be met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If these criteria are satisfied, the Court then considers whether the action falls within one of the three categories of class suits provided for in the subsections of Rule 23(b).[5]

### B. *The Proposed Class*

■ Putative Class B includes all persons who: "executed a loan agreement for the purchase of a vehicle on a printed form ... that required that the borrower insure the vehicle against loss and damage, and allowed the lender, in the event of the borrower's failure to insure the vehicle, to obtain such insurance"; and were "charged for force placed insurance pursuant to coverage arranged by SAI" where the "charge was imposed, remained outstanding, or was paid on or after June 26, 1985." (Pls.' Am.Mot. at 1.)

This putative class is clearly overbroad in relation to the remaining allegations in the Complaint, and that overbreadth precludes a finding of "typicality". The Court, therefore, need not discuss "commonality", "numerosity", or "adequacy of representation", and, likewise, does not reach the second step of class certification analysis.

### C. *Count III, Lack of Typicality*

■ Rule 23(a)(3) requires that the "claims or defenses of the representative par-

---

**2.** Plaintiffs later amended their Complaint to add Count IV, alleging that Meadows violated the Truth in Lending Act, 15 U.S.C. §§ 1160 et seq.

**3.** Count I was brought on behalf of Class A, Count III was brought on behalf of proposed Class B, and Count II was brought on behalf of both. Although it was not specified, Count IV was brought on behalf of Class A.

**4.** Class A was provisionally certified for settlement purposes only.

**5.** Here, Plaintiffs seek class certification under Rule 23(b)(3). Under Rule 23(b)(3), once the class fulfills the threshold requirements, the Court must then determine whether common questions of law or fact "predominate" and whether a class action is "superior" to other available methods of adjudication.

ties" be "typical of the claims or defenses of the class." A class representative's claim is typical " 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members' " and if his " 'claims are based on the same legal theory.' " *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993) (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). However, " '[i]f proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims.' " *Hickey v. Great Western Mortgage Corp.,* No. 94 C 3638, 1995 WL 121534, at *8 (N.D.Ill. Mar. 17, 1995) (quoting *Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990)).

Count III alleges that SAI engaged in a pattern of racketeering activity by conducting or participating in Meadows' affairs, yet the class definition is not in any way limited to Meadows' members. In fact, it appears from the accompanying motion to compel, that Plaintiffs somehow plan to make similar allegations against at least seven other credit unions.[6] (Plaintiffs' Motion to Compel Discovery from Stewart Associates, Incorporated, at 1–2.)

Furthermore, Plaintiffs pled Meadows as the enterprise, so the only individuals who could have been injured were Meadows' members. Thus, the only legitimate members of the class, as to this cause of action, would be Meadows' members. In order for a non-Meadows member to prove a similar RICO claim against SAI, he would have to plead and show the existence of some other enterprise—here, credit union—the affairs of which SAI was conducting.[7] He would also

have to show that he was a member of that particular credit union.

Even if these other entities exist, Plaintiffs' claims would not be "typical" because of the particularized factual allegations and proof required to show that each additional credit union is also an enterprise whose affairs SAI participated in or conducted.

"Courts faced with an overbroad class definition may deny certification for want of typicality." *McGarvey,* 1995 WL 404866, at *4; *Hickey,* 1995 WL 121534, at *9. Proof of Mr. and Mrs. Ruiz's claims will not prove all of the putative class members' claims. Thus, the Court holds that Plaintiffs' claims are not typical of the claims of all other putative class members and declines, therefore, to certify the class as to Count III.[8]

**D. *Count II, Lack of Jurisdiction***

Count II alleges that SAI engaged in fraudulent and/or deceptive business practices in violation of Illinois law. Federal jurisdiction for a claim arising under state law requires either that such claim is supplemental to a federal claim or is based upon diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1367. Since the Court has declined to certify the putative class as to Count III (the only federal claim), there exists no original federal jurisdiction upon which the proposed class members can "supplementally" bring Count II.[9]

The Illinois claim, on its own, poses no federal question, so jurisdiction can rest only on diversity grounds. *See* 28 U.S.C. § 1332. However, no such diversity exists—the Complaint clearly shows that all named parties are from Illinois. *Goldstein v. W.L. Gore & Assocs., Inc.,* 887 F.Supp. 168, 172 n. 2 (N.D.Ill.1995) (in class action diversity re-

---

6. There are potentially "hundreds" of other credit unions implicated by this proposed class definition. (Stewart's Response to Plaintiffs' Amended Motion for Class Certification, at 1.)

   It is apparent to the Court, based upon the discovery sought in their motion to compel (as well as a March 4, 1996 hearing on the same matter), that Plaintiffs' motives in attempting to certify an overly broad class is to procure information to which they are not entitled.

7. Indeed, it appears that this is exactly Plaintiffs' intention. Their motion to compel basically

seeks disclosure of all credit unions that SAI ever contracted with for force placed insurance.

8. Because the Court finds that the prerequisites of Rule 23(a) have not been satisfied, there is no reason to proceed with further analysis of Rule 23(b)(3)'s criteria.

9. Nothing in this Opinion should be taken as an expression of the Court's views as to Plaintiffs' (Mr. and Mrs. Ruiz) allegations in Count II and III against SAI, nor to challenge the propriety of the jurisdiction of those claims.

quired between named plaintiffs and named defendants). Therefore, the Court lacks jurisdiction over the putative class members' state law claim (Count II).[10]

### CONCLUSION

With regard to Count III, the requirements of Rule 23(a) have not been met. With regard to Count II, the Court lacks a basis of jurisdiction to entertain certification of the class. Thus, Plaintiffs' Amended Motion for Class Certification Against SAI is **DENIED**.

**10.** Even if, *arguendo*, the class could be certified as supplemental to the federal jurisdiction (over the RICO claim, Count III) of the named Plaintiffs, this Court would decline to exercise supplemental jurisdiction, since the putative class' claim under Count II would substantially predominate over Mr. and Mrs. Ruiz's claim under Count III (the claim over which the Court has original jurisdiction). *See* 28 U.S.C. § 1367(c)(2).