**EXHAUST UNLIMITED, INC., individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**CINTAS CORPORATION, Steiner Corporation, Mission Linen Supply, G & K Services, Inc., Ameripride Services, Inc., National Services Industries, Inc., Unifirst Corporation, Aramark Uniform and Career Apparel Inc., and Textile Rental Service Association, Defendants.**

No. 02–CV–0614–MJR.

United States District Court, S.D. Illinois.

July 26, 2004.

Barbara J. Hart, Brian D. Caplan, Stephanie E. Katz, Goodkind Labaton, New York City, Charles A. McCallum, III, R. Brent Irby, McCallum Law Firm, Vestavia Hills, AL, Edward A. Wallace, Kenneth A. Wexler, Nyran R. Pearson, Wexler Firm, Chicago, IL, Eugene C. Menges, Menges Law Offices, Belleville, IL, Lawrence G. Papale, Law Offices of Lawrence G. Papale, St. Helena, CA, Mark J. Tamblyn, Cutter, Ratinoff et al., Sacramento, CA, for Plaintiff.

Glenn E. Davis, Armstrong Teasdale, J. Richard McEachern, McEachern & FitzRoy, Louis F. Bonacorsi, Bryan Cave, Kurtis B. Reeg, Reeg, Nowogrocki et al., Harry B. Wilson, Jr., Joel B. Samson, Husch & Eppenberger, St. Louis, MO, Gregory M. Utter, Joseph M. Callow, Jr., Rachael A. Rowe, Keating, Muething, et al., Cincinnati, OH, Gordon R. Broom, Troy A. Bozarth, Burroughs, Hepler et al., Joseph P. Whyte, Robert H. Shultz, Jr., Heyl, Royster et al., Edwardsville, IL, Jason W. Hardin, Peter W. Billings, Jr., Fabian & Clendenin, Salt Lake City, UT, Jeffrey W. Sarles, Michael T. Sullivan, Robert F. Finke, Mayer, Brown et al., Jeffery M. Cross, John Z. Lee, Elizabeth T. Friedlander, Freeborn & Peters, Chicago, IL, Charles S. Bargiel, Mullen & Henzell, Santa Barbara, CA, Donald K. Schoemaker, Donald E. Weihl, Greensfelder, Hemker et al., Belleville, IL, James A. Lamberth, Lynette E. Smith, William N. Withrow, Jr., Troutman Sanders, Atlanta, GA, Robert A. Schwartzbauer, Dorsey & Whitney, Minneapolis, MN, Jason L. Holly, Starnes & Atkinson, Birmingham, AL, Brett C. Gerry, Chris-

topher C. Nee, James Sweet, John K. Felter, Kai W. Lyman, Mark E. Tully, Goodwin Procter LLP, Boston, MA, James E. De-Franco, DeFranco Law Firm, P.C., O'Fallon, IL, for Defendants.

Samuel Hill, Gardner, Middlebrooks et al., Birmingham, AL, for Respondent.

### MEMORANDUM & ORDER

REAGAN, District Judge.

This matter is before the Court on Plaintiff Exhaust Unlimited, Inc.'s ("Exhaust") "Motion to Certify Class" (Doc. 174) as to Count One of their class action complaint filed against Defendants Cintas Corporation, Steiner Corporation, Mission Linen Supply, G & K Services, Inc., AmeriPride Services, Inc., National Services Industries, Inc., Uni-First Corporation, and the Textile Rental Service Association (collectively, "Defendants"), all members of a nationwide textile linen supply industry. Exhaust brings suit on behalf of itself and other purchasers of linen services and supplies alleging Defendants, "who in large part make up the national textile linen supply industry" are not true competitive rivals, have made arrangements which substantially reduce competition in the retail linen supply business, impose improper ancillary charges, and conspire to restrain trade, all in violation of federal antitrust laws. Exhaust seeks certification of the following class: "All persons and entities in the United States that have purchased textile linen supplies and/or service from Defendants on or after February 22, 1991 and were charged an Environment Charge" (Doc. 175, p. 10). In a nutshell, Exhaust alleges Defendants unlawfully exchanged information and fixed prices in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*, by charging environmental fees unrelated to their actual environmental costs. This Court enjoys subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and venue is proper under 28 U.S.C. § 1391(b). The Court be-

gins its analysis with a brief recitation of the key facts and procedural history.

### I. Background and Procedural History [1]

Exhaust, an Illinois corporation specializing in automotive repair, was a customer of both Defendant Cintas Corporation ("Cintas") and G & K Services, Inc. ("G & K"), members of the textile linen supply industry. From at least 1995 until 2001, Exhaust rented uniforms from G & K. Then in 2001, Exhaust began renting from Cintas. Both Cintas and G & K charged Exhaust an "environment charge" which Exhaust alleges is a line-item charge imposed by all Defendants on their customers. Exhaust alleges that the environmental charges imposed by Defendants are a sham and unrelated to environmental costs. Exhaust defines an environmental charge as: "ancillary charges assessed by the Defendants that use an environment-related word, including, but not limited to 'environment,' 'sewer', 'waste-water,' or 'EPA.'" *See* Doc. 149.

On June 13, 2002, Exhaust filed a three-count complaint on behalf of itself and other purchasers of linen services and supplies alleging Defendants imposed on its customers environmental charges unrelated to environmental costs through a nationwide conspiracy. Count One contends all Defendants unlawfully exchanged information and fixed prices in violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* Count Two, again against all Defendants, claimed violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* Count Three charged all Defendants, except the Textile Rental Service Association, with unjust enrichment. In its February 27, 2003 Order, this Court dismissed without prejudice Counts Two and Three against all Defendants, leaving only Count One's Sherman Act violations (Doc. 127). Both Counts Two and Three were dismissed against all Defendants except for Cintas due to failure to state a claim upon which relief may be given.

---

1. The facts are gleaned from Exhaust's complaint (Doc. 1), Exhaust's motion for class certification (Doc. 174), Exhaust's memorandum in support of class certification (Doc. 175), Defendants' memorandum in opposition to class certification (Doc. 187), Cintas' individual memorandum in opposition to class certification (Docs. 135 and 186), Exhaust's reply memorandum in support of class certification (Doc. 188), and the testimony and evidence presented at the January 9, 2004 hearing regarding Exhaust's motion for class certification.

Doc. 127, p. 4, 6. Counts Two and Three were dismissed against Cintas for failure to plead with specificity under FEDERAL RULE OF CIVIL PROCEDURE 9(b). Doc. 127, p. 4–5. The Court gave Exhaust leave to file an amended complaint by March 24, 2003, but it chose not to do so. Accordingly, Count One is the only remaining claim.

On January 9, 2004, the Court heard testimony and arguments regarding Exhaust's motion for class certification (Doc. 174) which seeks certification of the following class: "All persons and entities in the United States that have purchased textile linen supplies and/or service from Defendants on or after February 22, 1991 and were charged an Environment Charge" (Doc. 175, p. 10). Exhaust seeks class certification as either a FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2) or 23(b)(3) class. Rule 23(b)(2) classes are those where "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is appropriate. Rule 23(b)(3) classes must involve matters where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is a superior to other available methods for the fair and efficient adjudication of the controversy."

## II. Standard Governing Class Certification

A plaintiff must first satisfy the requirements of FEDERAL RULE OF CIVIL PROCEDURE 23(a) in order to be granted a class certification. Rule 23(a) has four requirements: numerosity, commonality, typicality and adequacy of representation. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). Failure by a plaintiff as to one of the four requirements precludes certification as a class. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). If a plaintiff is able to satisfy all of the requirements of Rule 23(a), the district court must then determine whether a plaintiff's action can be maintained as a class action by meeting one of the requirements of FEDERAL RULE OF CIVIL PROCEDURE 23(b).

*See Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir.2000).

In order to determine whether a class should be certified, a court may make factual and legal inquires necessary under Rule 23. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675–76 (7th Cir.2001). A court need not accept a plaintiff's assertions as conclusive, but may receive any evidence necessary to make a decision on class certification. *Id.* The burden is on the party seeking class certification to demonstrate that all the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984).

## III. Analysis

### A. Requirements of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Because there is no magical number at which the numerosity requirement is established, courts have found this element satisfied when the putative class consists of as few as 10 to 40 members. *See, e.g., Markham v. White,* 171 F.R.D. 217, 221 (N.D.Ill.1997)(35–40 members). In determining whether the claimed class contains a sufficient number of members, the court is permitted to "make common sense assumptions in order to find support for numerosity." *Cannon v. Nationwide Acceptance Corp.,* 1997 WL 139472, at *2 (N.D.Ill. March 25, 1997).

■ Exhaust gives a good faith conservative estimate that the class size is well into the tens of thousands. The Court notes that Defendants do not dispute that Exhaust meets the numerosity requirement. District courts in the Seventh Circuit have held that the numerosity requirement was met in class actions involving much smaller classes. *See, e.g., Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D.Ill.1986)(29 class members); *Hendricks–Robinson v. Excel Corp.,* 164 F.R.D. 667, 671 (C.D.Ill.1996)(38 class members). Therefore, the class in this case clearly satisfies the numerosity requirement.

**510**

Additionally, Rule 23(a)(1) provides that a class action may be maintained only if "joinder of all members is impracticable." To demonstrate that joinder is impracticable, the class representatives "only need to show that it is extremely difficult or inconvenient to join all members of the class." C.A. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Section 1762 at 159 (2d ed.1986). As a general proposition, although the numerosity requirement does not rest on any magic number, *see Allen v. City of Chicago,* 828 F.Supp. 543, 550 (N.D.Ill.1993), permissive joinder is usually deemed impracticable where the class members number 40 or more. *See* H. Newberg, Class Actions Section 305 (1992). That standard is met in this case as it would be extremely difficult to join the thousands of members of the class. As a result, the Court finds that the numerosity requirements of Rule 23(a)(1) has been satisfied.

## 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2). Commonality requires a question of law or fact common to the whole class. *Allen v. City of Chicago,* 828 F.Supp. 543, 551 (N.D.Ill.1993). Courts have described this requirement as a low hurdle to surmount, *see Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill.1996), because, generally, one common question suffices. *Arenson,* 164 F.R.D. at 663. As long as there is "a common nucleus of operative fact," factual differences among the class members' experiences does not preclude a finding of commonality. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992); *Allen,* 828 F.Supp. at 552.

Exhaust argues that there are three common questions that unite all class members: (1) whether Defendants engaged in an unlawful exchange of information; (2) whether Defendants contracted, combined or conspired to restrain trade; and (3) whether Defendants' conduct caused injury to competition and antitrust injury. Defendants do not dispute that there are common questions involved in resolving Exhausts' claims. Instead, Defendants argue that individual is-

sues would predominate over the common issues thereby defeating class certification under Rule 23(b)(3), but not Rule 23(a)(2). That is, Defendants concede commonality under Rule 23(a)(2) but dispute that common questions of law or fact predominate under Rule 23(b)(3). In pertinent part, Rule 23(b)(3) provides that an action may be maintained as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED.R.CIV.P. 23(b)(3).

Since Exhaust's claim is brought under Section One of the Sherman Act, it must prove that (1) a contract, combination, or conspiracy between two or more persons (2) to restrain interstate commerce in the relevant market (3) caused an injury of the sort Congress intended to prevent by enacting the antitrust laws. *See Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 782 (7th Cir.1994); *Denny's Marina, Inc. v. Renfro Prods., Inc.,* 8 F.3d 1217, 1220 (7th Cir.1993). The plaintiff must then establish the amount of any damages attributable to the restraint. *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 396 (7th Cir.1993).

Accordingly, it seems likely there are common questions of law and fact as all potential plaintiffs are seeking damages under Section One arising out of their textile rentals and supply dealings. Courts in the Seventh Circuit hold that "the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs." *See In re Bromine Antitrust Litigation,* 203 F.R.D. 403, 408–09 (S.D.Ind.2001); *Sebo v. Rubenstein,* 188 F.R.D. 310, 313 (N.D.Ill. 1999); *Service Spring, Inc. v. Cambria Spring Co.,* 1984 WL 2925, at *2 (N.D.Ill.1984)("Without doubt, the existence of conspiracy and whether defendants fraudulently concealed the alleged conspiracy are common issues."); *In re Brand Name Prescription Drugs Antitrust Litig.,* 1994 WL 663590, at *2 (N.D.Ill.1994). Therefore, the Court finds that there is commonality sufficient under Rule 23(a)(2), but will address later herein whether the common issues of

fact and law are predominant so as to satisfy class certification under Rule 23(b)(3).

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claim be typical of those of the class. This requirement focuses on whether the named representative's claim has the same essential characteristics of the claims of the class at large. A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Consequently, a proposed class member's claim is not typical if proof "would not necessarily prove all the proposed class member's claims." *Ruiz v. Stewart Assocs.*, 167 F.R.D. 402, 405 (N.D.Ill.1996).

Defendants assert that Exhaust's claim is not typical of the putative class because: (1) Exhaust's definition of "environmental charge" includes charges with different names imposed at different times by different Defendants in different local markets; (2) Exhaust's impact analysis, whether the alleged conspiracy to impose environmental charges hurt Exhaust, would not offer any resolution or assistance to determine the impact for putative class members who paid different charges to different Defendants; and (3) Exhaust is not typical of the class based on its negotiations with Defendant Cintas. The Court agrees with Defendants' arguments.

While Exhaust seeks certification of a class of persons and businesses who paid an environmental charge, Exhaust's definition of "environmental charge" includes charges with different names imposed at different times by different defendants in different local markets. The charges include those labeled as "Env.Levy," "Env.Chr.," "Del/Env/ServiceThere," and "Del/Energy/Envichg". *See* Doc. 175, p. 1, n. 2. There is no single, common charge that all putative class members paid. In actuality, it appears that there are several hundred various ancillary charges imposed by the Defendants that Exhaust attempts to include within its all-encompassing definition of "environmental charge." This includes charges relating to delivery, fuel, waste water, service, inventory and maintenance fees. The charges vary in amount and in the method of calculation, are the subject of individual negotiations, have varying cost justifications, and were not consistently charged by Defendants in particular markets or at particular times. While Exhaust paid an "Del/Energy/Envir chg." to Defendant Cintas for a period of time, the factual and legal issues relating to that charge, including cost justification, pricing structure, and individual negotiations, are not typical or representative of the factual and legal analysis for other putative class members who paid different charges to Cintas and other Defendants. Other putative class members paid charges at various times in different markets pursuant to individual contracts and contract negotiations. As a result, proving Exhaust's claim would "not necessarily prove all the proposed class member's claims." *See Ruiz v. Stewart Associates, Inc.*, 167 F.R.D. 402, 405 (N.D.Ill.1996).

Additionally, Exhaust's impact analysis would not offer any resolution or assistance to determine the impact for putative class members who paid different charges to different Defendants. Dr. Gary L. French, Exhaust's expert economist, conceded that in order to determine impact, he would have to track the historical costs associated with each Defendant's particular charge. *French Depo.* at 103–04, 109–11, 127–29. Dr. French also conceded that there are legitimate costs associated with such charges that would have to be included in an impact analysis, and conceded that if legitimate costs met or exceeded the charge, there would be no impact and no damages. *French Depo.* at 72–82, 99–100, 102, 127, 133–34. Therefore, impact could only be determined by engaging in literally hundreds of impact analyses for different charges from different defendants at different time periods in different markets.

Moreover, the record indicates that Exhaust participated in some form of negotiations with Defendant Cintas with respect to its contract and obtained some price and term concessions. At the time Exhaust contracted with Cintas, Exhaust completed and

signed a "New Customer Fact Sheet." Doc. 167, Ex. D. The fact sheet included a question asking Exhaust to check yes or no as to the following statement: "Environment/Delivery Charge Explained, *$2.00* per week." Doc. 167, Ex. E. Exhaust checked yes, signifying that the charge had been explained to Exhaust. *Id.* This type of individual discussion and explanation may not be typical amongst all the class members and may not be common practice of the other Defendants. Furthermore, the fact that Exhaust received some economic benefit for entering into a contract with Cintas must be taken into account for liability and impact analysis. If Exhaust's negotiation is typical of an entire class that is involved in negotiations, it only evidences the individual nature of the liability and impact analysis. If most class members do not negotiate terms and pricing concessions, then Exhaust's negotiations are atypical. Consequently, for the above reasons, the Court finds that Exhaust has not met the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

Serious allegations including claims of conflict of interest and self-dealing have been raised by Defendant Cintas against Exhaust's counsel. But since the Court finds that Exhaust has not met the typicality requirement of Rule 23(a)(3), it need not determine whether Rule 23(a)(4)'s adequacy of representation requirement has been met as Exhaust needs to meet all four requirements of Rule 23(a) for class certification.

### B. Requirements of Rule 23(b)(2) and (3)

As the Court finds that Exhaust has not met the requirements of Rule 23(a)(3), it need not necessarily reach whether Exhaust meets the requirements of Rule 23(b)(2) or (3). However, the Court notes that Exhaust's complaint is not the typical sort certified as a Rule 23(b)(2) class action. The Court questions whether the relief sought herein truly is primarily equitable in nature so as to be suitable as a Rule 23(b)(2) class action, or whether the primary relief is monetary damages.

Moreover, the Court questions whether the monetary damages requests are merely incidental to the litigation, as required under Rule 23(b)(2). *See, e.g., Jefferson v. Ingersoll International, Inc.,* 195 F.3d 894, 896 (7th Cir.1999)(use of Rule 23(b)(2) in cases involving damages is permissible only where predominant relief is an injunction or declaration, and damages are incidental to such equitable relief; incidental damages arise from wrong to class as a whole, not from circumstances that require fact finding on individual class members' cases.). At the class certification hearing, Exhaust's counsel, Barbara Hart, when asked by the Court whether Exhaust was seeking injunctive relief and certification under Rule 23(b)(2), responded:

> . . . .we very much do want [a] damages class here. It is a simple case. It should be certified as [a] damages class. I don't think we need to have a non-opt out class. I think there is data here that we can establish damages and impact to the class members, and the injunctive claim. I would rather succeed on the damages claim, Your Honor, and I think it is absolutely called for that the damages class be certified.

Consequently, Exhaust's counsel's response raises this Court's suspicions as to the propriety of certifying this action as a Rule 23(b)(2) class action.

■ Defendants persuasively argue at great length regarding how individual issues would predominate over common issues of law and fact defeating certification as a Rule 23(b)(3) class. For certification under Rule 23(b)(3), the court must conclude (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676 (7th Cir. 2001). Defendants argue that individualized inquiry and analysis is required in: (1) proving facts of injury, (2) amount of damages, (3) proving the alleged conspiracy, and (4) proving a restraint of trade.

■ Common proof cannot establish that each customer paying an environmental

charge was injured as a result of the alleged conspiracy. In an antitrust matter such as this, the casual link between the antitrust violation and the damages suffered may not be based on speculation but must be proven with record evidence and a fair degree of certainty. *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 327 (5th Cir.1978). Proof is needed that the plaintiff paid more than the price that would have existed "but for" the alleged conspiracy. *County of Oakland v. City of Detroit,* 866 F.2d 839, 847 (6th Cir. 1989). To establish impact, an expert must "construct a hypothetical market, a but-for market, free of the restraints and conduct alleged to be anticompetitive." *Sample v. Monsanto Co.,* 218 F.R.D. 644, 650 (E.D.Mo. 2003).

Defendants' expert economist Dr. Richard T. Rapp testified at the class certification hearing that many customers who paid an environmental charge were not injured at all. A class member could not have actually been injured unless the alleged conspiracy inflated its net payments for textile rental services above the competitive (or "but-for") price. In the matter before the Court, it is the total invoice amount that matters for this purpose. If the total invoice price is equal to the but-for price, the customer would not be injured.

The but-for price of a supplier-customer transaction cannot be established without delineating the market in which it occurs. The second prong of a Section One Sherman Act claim requires restraint of interstate commerce in the "relevant" market. Common proof of actual injury to each class member requires that all class members operate in the same relevant market, otherwise, they could not be affected in a common manner by the challenged conduct. The potential class members are in many locations across the country and geographically diverse and, consequently, in various "relevant" markets.

Furthermore, the but-for-price-what a customer would pay in an unrestrained market would also vary over time, reflecting changes in competitive dynamics, customer needs, supplier costs, and other factors affecting market price, and would depend on the mix of products and services being considered. *See Abrams v. Interco Inc.,* 719 F.2d 23, 31

(2d Cir.1983)(rejecting class certification in antitrust case involving "scores of different products" and market "fluctuations over time"). Only individualized inquiry could account for all these factors and determine the competitive price applicable to a particular transaction. *See Dry Cleaning & Laundry Inst. v. Flom's Corp.,* 1993 WL 527928, at *5 (E.D.Mich.1993)(rejecting class action certification because of varying market conditions, pricing, and discounts).

Additionally, individual inquiry is necessary, and would also predominate, to establish the prices actually paid by each class member. Prices and other contract terms may be individually negotiated and cover both the total invoice price and each component of that price. Elements included in total price include, but are not limited to: alteration, amortization, automatic charge, check fee, damage/loss, delivery, emblem, energy, equipment, finance, fuel, late payment, launder only, maintenance, on-site labor, rental, repaid, restocking, shipping, soap, tax, and waste water fees. Consequently, the result is a diverse mix of base prices and ancillary charges and of products and services, with total invoice prices varying from customer to customer. *See In re Indus. Diamonds,* 167 F.R.D. 374, 384 (S.D.N.Y.1996)(rejecting common proof of injury where "negotiations with each purchaser" would require court to "scrutinize each transaction to ascertain whether the purchaser paid a supra competitive price"); *Butt v. Allegheny Pepsi–Cola Bottling Co.,* 116 F.R.D. 486, 491–92 (E.D.Va.1987)(proof of impact varied "by customer, by transaction, and by products purchased" so that "individualized" issues "overwhelm the common ones"). With customers so diverse and dispersed, and with prices established in decentralized negotiations, such individualized inquires would be especially necessary in this matter. *See In re Beef Indus. Antitr. Litig.,* 1986 WL 8890, at *1–2 (N.D.Tex.1986)(rejecting class certification in price-fixing case because the prices actually paid "resulted from a multitude of varying factors").

Another individualized inquiry arises because customers who received compensating discounts or offsets, such as for ordering in

bulk, likely benefitted or were not affected by environmental charges, and only examination of individual customer contracts and invoices would determine whether a class member was injured. *Cf. In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1019 (7th Cir.2002)(national class action failed due in part to "different discounts"); *Dry Cleaning & Laundry Inst.,* 1993 WL 527928, at *4 (E.D.Mich.1993)(rejecting class certification where "thousands of transactions were involved over many years; each transaction was different; [and] various plaintiffs may have purchased the dry cleaning supplies [at] different prices and varying quantities [and] in different ways"). Also, this Court needs to consider that customers order different mixes of products and services, making invoice prices and price increases incomparable across the class. Customers are from a variety of businesses, including hotels and restaurants, automobile service and repair facilities, food processing companies, hospitals, nursing homes, and supermarkets. Products and services include laundered uniforms, gowns and coats used by medical staff, barbers, beauticians, and waitresses, table linens, bed linens, towels, industrial work uniforms, mats and rugs, dust control items, and wiping towels. The impact of total invoice price would not be measurable without considering the particular mix of products and services covered by each invoice. *See Bridgestone/Firestone,* 288 F.3d at 1019 (rejecting class action due to product variability).

Consequently, the Court finds that individual issues would predominate over common questions of law and fact. Accordingly, even if Exhaust had met the requirements of Rule 23(a), class certification would be denied under Rule 23(b)(3). *Cf. In re Agricultural Chem. Antitr. Litig.,* 1995 WL 787538, *4 (N.D.Fla.1995); *Kenett Corp. v. Massachusetts Furniture & Piano Movers Assoc.,* 101 F.R.D. 313 (D.C.Mass.1984).

### *IV. Conclusion*

As the Court finds that Exhaust has not met its burden in proving it meets the requirements of FEDERAL RULE OF CIVIL PROCEDURE 23(a), the Court hereby **DENIES** Ex-

haust's motion for class certification (Doc. 174). Since the class certification motion is denied, the Court **DENIES AS MOOT** Defendant Cintas' motion for partial summary judgment (Doc. 164).

Additionally, the Court **DIRECTS** Plaintiff Exhaust and Defendant UniFirst Corporation each to file a memorandum (no longer than ten double-spaced pages) with the Court **on or before August 12, 2004** regarding their positions on the status of Exhaust's pending motion for preliminary approval of settlement agreement and certification of settlement class (Doc. 196) in light of the Court's denial of class certification. Plaintiff Exhaust and Defendant UniFirst Corporation each may file with the Court a response to the other party's memorandum (no longer than five double-spaced pages) **on or before August 19, 2004.**

**IT IS SO ORDERED.**