963 F.2d 1013
 22 Fed.R.Serv.3d 843, RICO Bus.Disp.Guide 8009
 Mariluz ROSARIO, Teresa Shapiama, Ligny Canet, Dolores
Maldonado, Carmen Ortiz, Sheila Benton, Charlie Lowe,
Milagro Perez, Myrna Garcia, Daniel Barba, Altagracia Lopez
and Joyce E. Walker, individually and on Behalf of all
others similarly situated, Plaintiffs-Appellees, Cross Appellants,
v.
Anthanasios LIVADITIS, also known as Tom D'or, D'or Beauty
College, Incorporated, an Illinois corporation, and D'or
School of Cosmetology, Incorporated, an Illinois
corporation, Defendants-Appellants, Cross Appellees.
 Nos. 89-3745, 90-1025 and 90-1639.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 3, 1991.
Decided May 13, 1992.
Rehearing and Rehearing In Banc
Denied July 7, 1992.
 
 Alan A. Alop (argued), Richard M. Wheelock, Legal Assistance Foundation of Chicago, Diane E. Citrino and Elise M. Faber, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.
 Raymond L. Prusak (argued), James V. Nudo, Prusak & Nudo, Tom Livaditis, Chicago, Ill., for defendants.
 Before WOOD, Jr.* and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 These appeals arise from a lawsuit instituted by a class of former students of two beauty schools. The class alleged that the schools were "sham schools" because the schools provided little or no education and did not adequately prepare the students for a career in cosmetology despite representations to the contrary. These students' claims were grounded in RICO, the Illinois Consumer Fraud Act and breach of contract. The students' Illinois Consumer Fraud claim and two of three RICO claims that went to the jury were successful, although the jury awarded the class damages only as to the consumer fraud count. The class did not prevail on one RICO claim or the breach of contract claim.
 
 
 2
 Defendants-Appellants, Anthanasios Livaditis, D'or Beauty College, Incorporated and D'or School of Cosmetology, Incorporated challenge the certification of the class of former students of D'or Beauty College and D'or School of Cosmetology. Defendants-Appellants also challenge the trial court's decision barring them from further discovery shortly before trial, and they maintain that this court should reverse the jury's verdict regarding the consumer fraud count because of the trial court's discovery decision. Finally, Defendants-Appellants claim that the trial court improperly awarded the class attorney's fees since the jury awarded the class damages only as to the Illinois Consumer Fraud count.[1]
 
 
 3
 The class brings a cross appeal. They maintain that the trial court abused its discretion in refusing to grant the class' motion for a new trial on damages on the RICO counts for which the jury found the two beauty schools liable but awarded zero damages.
 
 
 4
 We affirm the class certification and the trial court's ruling on discovery matters. We also affirm the trial court's award of attorney's fees. However, we reverse the jury's verdict granting zero damages to the class while finding the appellant beauty schools liable on two RICO counts and the trial court's denial of a new trial on this issue. In order to find the appellant beauty schools liable on the RICO counts, the jury must have found that the class sustained some injury to business or property. We therefore remand for a hearing on damages as to the RICO counts on which the beauty schools were found liable.
 
 FACTS
 
 5
 Fourteen hundred four former D'or Beauty College and D'or School of Cosmetology students brought a class action suit against the two schools and the schools' owner, Anthanasios Livaditis a/k/a Tom D'or (collectively "D'or"). The class was certified pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) and consisted of all those who had executed a contract with the beauty schools for the purpose of a cosmetology education and who had attended one of the D'or schools and for whom the corporate defendants received some kind of payment from state guaranteed loan programs between the dates of February 11, 1983, and August 1988. The class included students who attended the D'or schools for as little as 1 1/2 weeks to as long as was necessary to complete the 1500 course hours required for graduation.
 
 
 6
 The class alleged that D'or violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), and the Illinois Consumer Fraud Act ("CFA"), Ill.Rev.Stat. ch. 121 1/2, p 262. The class also brought a common law breach of contract claim against D'or. In their fourth amended complaint, the class additionally sought an order to prevent Livaditis from fraudulently conveying assets to his family members in an attempt to preclude the assets from being used to satisfy any judgment received by the class. After an 18-day trial, the jury found the two beauty schools liable under RICO, assessing zero damages. The jury found all three appellants liable under CFA and awarded the class actual damages of $640,224. The jury found in favor of all appellants on the breach of contract count and for Livaditis individually on the RICO count asserted against him. Finally, the trial court awarded the class $271,711.80 in attorney's fees.
 
 
 7
 Discovery took place for over two years before this case went to trial. During this time D'or changed its representation several times. D'or's fourth new counsel, Mr. Prusak, filed his appearance on October 5, 1988, more than a year after the class filed its original complaint. Mr. Prusak became D'or's counsel after a default judgment had been entered against D'or. The default judgment was subsequently vacated. By the time Mr. Prusak filed his appearance as D'or's counsel, the court had already granted an extension on discovery until August 26, 1988. The court stated at that time that no further extension would be granted. Despite this statement, the court extended discovery only to allow the class to complete nine remaining depositions. At this point, Mr. Prusak became D'or's fourth new counsel. Discovery was ordered closed on March 15, 1989, but was again opened until April 5, 1989, in order to allow both parties limited discovery on the class' fraudulent conveyances count, which was added in the fourth amended complaint. On July 12, 1989, the court entered a protective order to prevent D'or's counsel from contacting any of the class' witnesses on any matter concerning the litigation. The class requested that the court issue this order when D'or's counsel notified the class' counsel that he intended to hire an investigator to contact some of the class members. The jury trial began on August 7, 1989, and the jury rendered its verdict on August 25, 1989.
 
 
 8
 Former D'or students and teachers testified at trial. These witnesses recounted the poor conditions at the two D'or facilities that were not conducive to learning. The trial testimony indicated that D'or classes contained illiterate students, despite a federal requirement that students lacking a high school education pass an aptitude test in order to be admitted. No student ever failed the D'or admission test. Frequently, there were insufficient numbers of teachers for periods as long as a month or longer at the D'or schools. And, when there were teachers, the student-to-teacher ratio in D'or classes generally exceeded the state requirement of 20-to-1 by ten and often thirty. The lack of teachers resulted in many different levels of students being taught at once in a single class. There were unlicensed teachers at the D'or schools in violation of state law. D'or offered "student teacher" courses, but as soon as the student teachers signed up (and paid $1,000-$2,000 for the course), they were sent into the classroom without any real preparation or instruction. Although the D'or schools advertised that classes in Spanish were available, in many instances there were no Spanish-speaking instructors. As a result, those students speaking only Spanish were forced to attend overcrowded classes in English and learn the best they could.
 
 
 9
 The students were frequently furnished with substandard equipment that broke shortly after being issued. The students were then required to buy replacement hairdryers, curling irons, and other such equipment at high cost. Moreover, the students were never issued sanitary equipment such as Barbicide jars; they had to buy those from D'or or go without them.
 
 
 10
 There was testimony indicating that the physical conditions of the D'or schools were as poor as the quality of the teaching. The schools were infested with rodents and cockroaches. The ceilings leaked when it rained, and the heating-ventilating-air-conditioning system was inadequate. The bathrooms were squalid, and the students were often required to clean the bathroom toilets and take out the garbage.
 
 
 11
 The National Accrediting Commission for Cosmetology Arts and Sciences ("NACCAS") is a private organization comprised of accredited cosmetology schools nation-wide. The Board of Commissioners of the NACCAS withdrew the two beauty schools' accreditation in June 1987 due to unsafe and unsanitary school facilities, improperly assigned instructional staff, use of unlicensed personnel, equipment not in working order, inadequate heating and air conditioning, multiple classes being taught in the same rooms and unsanitary bathrooms. The NACCAS never reaccredited the D'or schools.
 
 
 12
 After the trial, the trial court awarded the class $271,711.80 in attorney's fees, which was the entire amount the class requested, save $50 for a Reader's Digest consultation that the court described as "inexplicable."
 
 ANALYSIS
 
 13
 D'or first argues that the trial court improperly certified the class of former D'or students under Fed.R.Civ.P. 23(a). There are four prerequisites to a class action under Fed.R.Civ.P. 23(a): numerosity, commonality, typicality, and fair and adequate representation. Once these four prerequisites are satisfied, the potential class must also satisfy at least one provision of Rule 23(b). D'or does not challenge the trial court's numerosity finding, nor the trial court's finding that the class was maintainable under Rule 23(b)(3). D'or maintains that the class does not satisfy the commonality, typicality or fair representation provisions of Rule 23(a). We will not, of course, reverse the trial court's certification of the class unless we find that the trial court has abused its discretion. Secretary of Labor v. Fitzsimmons, 805 F.2d 682 (7th Cir.1986).
 
 
 14
 Fed.R.Civ.P. 23(a)(2) requires that there be questions of law and fact common to the class. D'or says there is no commonality of fact and law between the class members' claims because the class consists of students with varying lengths of exposure to the D'or program, some class members were satisfied with their teachers, and at least two class members graduated from D'or schools and passed the state licensing exam. D'or asserts that the presence of these two satisfied students shows that not every member of the class suffered, so commonality is not met. The fact that there is some factual variation among the class grievances will not defeat a class action. Patterson v. General Motors Corp., 631 F.2d 476, 481 (7th Cir.), cert. denied, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1980). A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). See Franklin v. City of Chicago, 102 F.R.D. 944, 949-50 (N.D.Ill.1984). Although D'or can point to two D'or students who managed to pass the state licensing exam in spite of the many obstacles to such a feat that were furnished by D'or, the common question which is at the heart of this case does not change: were the D'or schools operated pursuant to an ongoing scheme to defraud and deceive prospective students?
 
 
 15
 The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality. We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." De La Fuente v. Stokley-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983). In this case each class member's claims arise from the same event or practice of the D'or beauty schools, so the claims meet the typicality requirement. D'or attempts to refute the trial court's finding of typicality by again raising the fact that two members of the class testified at trial that they were satisfied with their cosmetology education. D'or claims the named plaintiffs' case is necessarily diminished by the presence of these "satisfied" students and this antagonism defeats the typicality requirement of Fed.R.Civ.P. 23(a)(3). Whether or not one or two members of the class testified that they were satisfied does not necessarily lead to the conclusion that their claims are not typical of the class. It is more likely that the "satisfied" class members suffered less injury than other class members, not that they suffered no injury. In De La Fuente, we noted that we have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative. De La Fuente, 713 F.2d at 232. Instead, we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3). Id. at 233.
 
 
 16
 The final subdivision of Rule 23 requires that the representative parties fairly and adequately represent the class. A class is not fairly and adequately represented if class members have antagonistic or conflicting claims. Fitzsimmons, 805 F.2d at 697. D'or raises the argument for the first time on appeal that the class fails Rule 23(a)(4) because the class contains licensed practicing cosmetologists. Usually, we will not consider an argument for reversal raised the first time on appeal unless it goes to the district court's subject matter jurisdiction. See Heiar v. Crawford County, Wis., 746 F.2d 1190, 1196-97 (7th Cir.1984). D'or attempted to raise this argument after the case was submitted but before the jury rendered its verdict; however, the trial court refused to consider the argument's merits stating that D'or should have submitted it before the case went to the jury. We will consider D'or's argument now, but it makes no difference in this instance because we find the argument has no merit. The argument goes like this: a few class members are satisfied with their education and are now licensed practicing cosmetologists. These successful cosmetologists' livelihood depends upon their reputation. Their reputation is called into doubt as a result of the negative publicity arising from the class action concerning the D'or schools. The entire class is not adequately represented if there are successful class members who are "stigmatized" by the class' lawsuit.
 
 
 17
 We cannot identify any substantial factual basis for D'or's supposition. If Illinois law required licensed cosmetologists to publicly display their diplomas while they work, perhaps there would be some merit to D'or's theory. However, cosmetologists in Illinois are required only to display a registration certificate that does not indicate where the cosmetologist received his or her education. See Ill.Rev.Stat. ch. 111, p 1701-7, -10. No Illinois law forces a licensed practicing cosmetologist to reveal from what cosmetology school that person graduated. In fact, the field places greater emphasis on where cosmetologists receive continuing education than where they receive the initial 1500 hours of education required for certification. See, for example, Carol Kleiman, Well Tressed Clients Keep Industry Growing, Chicago Tribune, JOBS 2 (December 21, 1986); see also Ill.Rev.Stat. ch. 111, p 1703-7 (requiring a minimum of 20 contact hours of continuing education for renewal of a cosmetology license). The two "satisfied" practicing cosmetologists that D'or points to cannot destroy the certification of the class if the basis of their conflict with the class' claims is speculative.
 
 
 18
 D'or also contends that the trial court abused its discretion by refusing to allow D'or to engage in discovery after April 5, 1989. D'or further maintains that the class was allowed to continue discovery while D'or was barred by a protective order prohibiting D'or from contacting class members. D'or says that the trial court's discovery orders forced D'or to try the case in a vacuum, and D'or asks us to reverse the jury's verdict finding D'or liable for violations of the Illinois Consumer Fraud Act. In fact, on March 15, 1989, discovery was extended for both sides on the class' newly added fraudulent conveyances count, and the protective order was entered to protect the attorney-client relationship of class members and class counsel. D'or's counsel explains that he came to the case after D'or had changed counsel three times, so he needed more discovery in order to be adequately prepared for trial. However, excepting the extension D'or's third counsel requested, the record reveals no indication of requests for extensions on discovery. D'or's fourth counsel had time, approximately six months from the time he filed his first appearance to the time the case went to trial, to do discovery, and if counsel was not able to do as much discovery as D'or would have liked, it is now too late to remedy the situation. A party who fails to pursue discovery in the face of a court ordered cut-off cannot plead prejudice from his own inaction. See, for example, Secord v. Cockburn, 747 F.Supp. 779 (D.D.C.1990). Accordingly, the judge's decision regarding discovery is affirmed and so is the jury's verdict on Count VI, the Illinois Consumer Fraud Act claim.
 
 
 19
 D'or's last argument on appeal concerns attorney's fees. D'or says that the Supreme Court's opinion in Hensley v. Eckerhart, 461 U.S. 424, 425, 103 S.Ct. 1933, 1935, 76 L.Ed.2d 40 (1983), prohibits the class from recovering fees of over $270,000.00 because the class' attorneys spent an overwhelming amount of time on RICO claims for which the class received no damages. Hensley, D'or says, requires that the fee award be reduced or limited in relation to the "limited" relief actually obtained by the class. Our answer to D'or's argument is two-fold. First, we do not believe that the jury could find the D'or beauty schools liable for RICO violations and assess an award of $0 damages, and we are reversing the trial court's denial of a new trial on the issue of damages for Counts I and II for reasons which we explain more fully below. Second, we do not believe that Hensley nor our own opinions following Hensley require a trial court to grant attorney's fees to a prevailing plaintiff in direct proportion to the overall relief obtained.[2]
 
 
 20
 We review the trial court's grant of attorney's fees for abuse of discretion. Jardien v. Winston Network, Inc., 888 F.2d 1151, 1156 (7th Cir.1989). Thus, in Zook v. Brown, 865 F.2d 887, 896 (7th Cir.1989), which D'or cites, this court affirmed a district court's 75% reduction in attorney's fees since the plaintiffs achieved only "limited results" because the trial court's decision was not wholly unreasonable, just as Judge Conlon's decision in this case was not wholly unreasonable.
 
 
 21
 D'or's reliance on Hensley is misplaced. The Hensley case concerned a class of plaintiffs involuntarily confined in a forensic unit of a state hospital challenging the constitutionality of treatment and conditions at the hospital. The class did not succeed on all of the claims it pursued, but the trial court refused to eliminate from the attorney's fee award those hours spent on unsuccessful claims and granted the class' request for fees pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988. The Supreme Court vacated the judgment of the court of appeals affirming the trial court and remanded for further proceedings. D'or hangs its argument on the following part of the Hensley opinion: "the district court should focus upon the significance of overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. Although the language D'or quotes to us seems to mandate the trial court to award attorney's fees in proportion to the relief the prevailing plaintiff obtains, the quoted language does not exist in a vacuum. D'or fails to quote the following language from the sentences preceding the one D'or included in its brief: "Many civil rights cases present only one claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.... Such a lawsuit cannot be viewed as a series of discrete claims." Id. Once the language D'or quotes to us is put in its proper context, it is clear that the district court in this case did exactly what the Hensley Court stated should be done. The class in this case received a damage award for D'or's violation of the Illinois Consumer Fraud Act. The CFA claim is clearly related to the RICO claim--both claims are based on the defendants' failure to provide D'or students with an adequate education that would enable them to become licensed practicing cosmetologists. Only "time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable." Jackson v. Illinois Prisoner Review Board, 856 F.2d 890, 894 (7th Cir.1988). Although the class did not receive a damage award for the RICO counts on which they prevailed, the time spent on the claims was not unrelated to the claim for which the class did receive damages.
 
 
 22
 Anyway, to the extent that D'or's argument for reduction of the attorney's fee award granted to the class depends upon the fact that the jury awarded no damages on the RICO counts for which it found the D'or beauty schools liable, the argument's strength is diminished because we do not believe the jury could find the D'or schools liable for RICO violations and award the class $0 damages. The jury found that the D'or schools violated 18 U.S.C. § 1962(a) and (c). A plaintiff prevailing on such a count may receive damages under 18 U.S.C. § 1964(c), which provides: "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold damages he sustains and the cost of suit, including a reasonable attorney's fee." Judge Conlon instructed the jury: "Before you find for the plaintiffs you must also find that plaintiffs sustained an injury to business or property. Injury to property includes loss of governmental student loans which plaintiffs are obligated to repay." In the face of the statutory provisions quoted above and the Judge's instructions on the law, the jury assessed zero damages after finding the D'or schools liable for violations of RICO, and the trial court refused to grant a new trial on damages. The class has appealed the trial court's denial of its motion.
 
 
 23
 The trial court's decision to grant or deny a new trial rests within that court's sound discretion and is rarely disturbed. However, while we do not readily overturn a damage award when the trial court has denied the plaintiff's motion for a new trial, we will do so when the jury's verdict is contrary to reason and the trial court's denial of a new trial on damages is an abuse of discretion. See Pincus v. Pabst Brewing Co., 893 F.2d 1544 (7th Cir.1990); Bucher v. Krause, 200 F.2d 576, 586 (7th Cir.1952), cert. denied, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953). The trial judge's denial in this case is an abuse of discretion because it is contrary to law.
 
 
 24
 We have said that a plaintiff injured by RICO violations deserves "complete recovery." Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1310 (7th Cir.1987). A finding of liability for violations of RICO is conspicuously inconsistent with an assessment of zero damages for those violations since the jury was required to find that the class suffered an injury to business or property before finding D'or liable. The jury's damage assessment is made more remarkable because the jury awarded the class over $600,000 in damages for the CFA claim. Both the RICO claims and the CFA claim were supported by identical facts; thus, it seems that the facts must support some actual damages award for the RICO claims. The Court of Appeals for the Fifth Circuit pointed out as much in Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075 (5th Cir.1988), cert. denied, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989). In Video International, VIP sought a new trial on the issue of damages where the jury had found WAX liable for antitrust violations but allotted zero damages for the claim. VIP had tried the case as one set of facts demonstrating a single injury for which the jury could find liability under any one or all of three theories. VIP asserted claims under antitrust, civil rights and Texas tort law. The jury in Video International awarded VIP zero damages on the antitrust claim, $200,000 compensatory and $2.5 million punitive damages for the civil rights claim, and $1.245 million actual and $500,000 punitive damages for the Texas tort law claim (tortious interference with contract). The Video International court speculated that the jury probably decided the total amount it wished to award and then apportioned the award among the different theories rather than awarding duplicative damages on each separate theory in the same amount. Video International, 858 F.2d at 1086. In remanding for damages on all the claims the court looked to the conflict between the jury's assessment of zero damages for the antitrust claim and the jury's wide-ranging damage assessments for the other claims, which were all based on identical facts.
 
 
 25
 While not identical, the case before us is similar to Video International. The Video International court ordered a new trial on all claims, not just the antitrust claim for which the jury awarded no damages. In this case, a new trial on damages for all claims is not warranted, so we affirm the award on the class' CFA claim. However, like the Video International court, we suspect some jury confusion in this case. During deliberations, the jury asked the Judge whether it could stipulate that any actual damages it found go back to the federal government for the students' losses. The Judge responded that the jury could not do so. One hour later, the jury rendered its verdict. In her memorandum order denying the class' motion for a new trial on damages, Judge Conlon concluded that the jury could have found the federal government suffered the loss from the defaulted student loans, not the students. This conclusion, however, is not supported by law. It is the plaintiffs who remain liable to the federal government for repayment of the loans, and the jury was instructed that this liability amounted to an injury to business or property for purposes of RICO liability. We emphasize that we are not reversing the trial court's denial of the class' motion for new trial on damages simply because we believe the damages for the RICO counts were inadequate. The jury did not award even nominal damages on the RICO counts. The amount of the students' outstanding loan obligations was presented to the jury by both parties in a joint exhibit. The jury in this case clearly did not consider as damages the students' undisputed loan obligations to the government of $3,478,836.96, yet the jury found D'or liable for RICO violations--a finding which was predicated on determining that the class was injured in business or property, defined as obligations to pay student loans. When the jury verdict is in contravention of the court's instructions, an appellate court will reverse for legal error. See Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 191 F.2d 302, 310 (7th Cir.1951) (court held that jury verdict was arbitrary and capricious when jury disregarded the court's instructions and the evidence in awarding an excessive verdict); see also Moore's Federal Practice, p 59.08 (2d ed. 1991). We therefore reverse Judge Conlon's denial of the class' motion for new trial on damages on Counts I and II of the fourth amended complaint and remand for a hearing on this issue.
 
 
 26
 We believe a partial new trial on damages for RICO Counts I and II of the fourth amended complaint will not result in an unfair trial for the D'or schools. The D'or schools argue that a new trial on damages only for the two RICO counts is unfair because the damages and liability issues are so intertwined. We do not find the beauty schools' argument persuasive. D'or has not appealed the jury's verdict on RICO liability. Instead, D'or has contented itself with replying to the class' appeal of the damages award. If, as D'or maintains, the damages and liability issues are so strongly intertwined such that a new trial only on the issue of damages is manifestly unfair to D'or, one would think that D'or would have appealed the liability issue. But, the schools left the liability finding unchallenged. Given that there is ample evidence in the record to support the jury's finding of RICO liability on Counts I and II, we believe a new trial is warranted as to damages only.[3]
 
 CONCLUSION
 
 27
 To sum up, we affirm Judge Conlon's certification of the class of students in this case as the certification meets the required elements of Fed.R.Civ.P. 23(a) and 23(b). We also affirm the Judge's refusal to allow D'or more discovery after the discovery cut-off given that D'or's new counsel had time to pursue discovery between the time he entered the case and the time the case went to trial and given that no extension was ever requested. Since we affirm the Judge's discovery decisions, we affirm the jury's verdict in favor of the class' Illinois Consumer Fraud claim. The attorney's fee award is also affirmed. Finally, although we understand the reasoning behind Judge Conlon's denial of the class' motion for new trial, we believe that decision must be reversed. The jury's verdict of $0 after finding the D'or schools liable on RICO violations is inconsistent with law. We therefore remand only for a new trial on damages for Counts I and II of the fourth amended complaint, damages awarded under Count VI, the CFA count, are affirmed. Costs against Defendants-Appellants, Circuit Rule 36, shall not apply.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.[4]
 
 
 
 *
 Judge Wood, Jr. assumed senior status on January 16, 1992, after oral argument in this case
 
 
 [1]
 Defendants-Appellants also appealed the trial court's entry of summary judgment on Count VII of the class' fourth amended complaint alleging fraudulent conveyances; however, appellants filed a motion on November 9, 1990, withdrawing their appeal on Count VII prior to argument
 
 
 [2]
 We note Northeast Women's Center v. McMonagle, 889 F.2d 466 (3rd Cir.1989), which states that a court cannot reduce the attorney's fee award according to a proportionality rule simply because of the relatively small RICO damages assessed by the jury
 
 
 [3]
 Unfortunately, it seems that a new trial on damages for RICO Counts I and II will be fruitless for the class. At oral argument, D'or's counsel informed the court that Anthanasios Livaditis has filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code and both beauty schools are no longer in business and are undergoing liquidation under Chapter 7 of the Bankruptcy Code. Nevertheless, the class deserves the right to have a judgment that it can seek to have enforced even in the face of the bankruptcy filings
 
 
 [4]
 On March 11, 1992, after oral argument, indeed after the foregoing opinion was prepared, Livaditis's bankruptcy counsel filed two motions. The first is entitled "Motion for Leave to File Additional Appearance" and the second is entitled "Motion to Vacate Judgment and Attorneys' Fee Award Against the Defendant Anthanasios Livaditis." The motions indicate that Livaditis was not named as an individual in Count VI of the complaint (Illinois Consumer Fraud); Count VI lists only the two beauty schools as defendants. However, the jury found in favor of the class and against all the defendants, including Livaditis, on Count VI, and the district court entered judgment accordingly. Now Livaditis asks us to allow his bankruptcy counsel to file an appearance in this case and to allow him to argue that the judgment against him be set aside because the district court was without jurisdiction to enter judgment against him on Count VI
 It is much too late in the day to allow Livaditis to assert these arguments. Livaditis did not raise the fact that he was not named in Count VI of the complaint at trial even though evidence was presented regarding his individual liability on that count and he could have objected when evidence was presented that went beyond the scope of the complaint. He did not object when the verdict form listed his name as a defendant in Count VI and the jury found him liable on that count with the two beauty schools. And, he did not object when the district court judgment order clearly named him as a defendant in Count VI. The argument he now attempts to raise does not go the district court's subject matter jurisdiction, and at this point the argument is considered waived. See, for example, Gray v. Lacke, 885 F.2d 399, 409 (7th Cir.1989), and Heiar v. Crawford County, Wis., 746 F.2d 1190, 1196-97 (7th Cir.1984).
 We also believe that defect in the complaint was effectively amended by the subsequent trial proceedings. Although he was not named in Count VI of the complaint, Livaditis came to trial and defended himself on the count. We have already noted that the verdict form listed his name, and the district court's order clearly included him as a defendant in Count VI. Finally, Livaditis even appealed the judgment entered against him on Count VI. Fed.R.Civ.P. 15(b) allows the pleadings to be amended to conform to the evidence presented at trial even after judgment. After thoroughly reviewing the record, we believe the evidence, at least implicitly, amended the pleadings in this case.
 The trial is over. The appeal is over. Livaditis had plenty of opportunities to make the arguments he is now attempting to assert. We deny both the "Motion for Leave to File Additional Appearance" and the "Motion to Vacate Judgment and Attorneys' Fee Award Against the Defendant Anthanasios Livaditis."