**Jose RUIZ and Emily Ruiz, Plaintiffs,**

v.

**STEWART ASSOCIATES, INCORPORATED and Meadows Credit Union, Defendants.**

**No. 95 C 3714.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 28, 1997.

James O. Latturner, Edelman & Combs, Chicago, IL, for Plaintiffs.

Leann Pedersen Pope, Burke, Warren & MacKay, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs Second Amended Motion for Class Certification Against SAI, pursuant to Federal Rule of Civil Procedure 23; and Defendant's Motion for Summary Judgment on Count III of the Complaint. For the following reasons, Plaintiffs' motion is granted and Defendant's motion is denied.[1]

### BACKGROUND

Meadows Credit Union ("Meadows") is a federal credit union which makes car loans to its members. Defendant, Stewart Associates Incorporated ("SAI") acts as an agent for American Security Insurance Company, which provides collateral protection insurance, also known as force placed insurance, to credit unions. Contracts that govern vehicle purchase financing routinely include provisions for force placed insurance. Such provisions require the borrower to insure the vehicle against loss or damage; if, however, the borrower fails to maintain the requisite insurance, the contract's terms permit the lender to insure the vehicle and then charge the borrower for the cost of that insurance.

In approximately 1986, SAI arranged collateral protection insurance coverage for Meadows. Meadows' stated purpose for procuring this insurance was to allow itself the option of protecting its interest in vehicles pledged as loan collateral. SAI also provided administrative services to Meadows, which included monitoring Meadows' members' maintenance of the required vehicle insurance, force placing insurance for Meadows, and corresponding with members regarding force placed insurance.

Plaintiffs, Jose Ruiz and Emily Ruiz, obtained a car loan from Meadows on March 10, 1989. The terms of the contract provided in pertinent part that, the borrower agreed:

to insure the Collateral for its full value against loss and damage.... If I do not insure the Collateral, you can insure it ... and may treat the cost of insurance as a further extension of credit or may demand that I repay you immediately for all payments you may incur in obtaining such insurance.

(Plaintiffs' Amended Motion for Class Certi-

---

1. Additionally, Stewart Associates Incorporated's Motion to Strike Several Responses in Plaintiffs' Rule 12(n)(3)(a) Response and Several State- ments in Plaintiffs' 12(n)(3)(b) Statement of Additional Facts is hereby denied.

fication Against SAI, at Appendix A.)[2] On four separate occasions between 1989 and 1991, SAI, on Meadows' behalf, force placed insurance on Plaintiffs' car. It is Plaintiffs' position that the force placed insurance was unnecessary and included charges not authorized in the credit agreement.

On June 26, 1995, Plaintiffs filed a three count Complaint alleging that: Meadows breached its contracts with consumers (Count I); Meadows and SAI violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count II); and SAI engaged in a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by conducting or participating in Meadows' affairs (Count III).[3]

Plaintiffs proposed two separate class certifications: Class A, consisting of all persons who were charged (or had an outstanding charge or paid a charge), for force placed insurance, by Meadows, during the ten years prior to the filing of the Complaint; and Class B, consisting of all persons charged (or had an outstanding charge or paid a charge), for force placed insurance, by SAI, during the ten years prior to the filing of the Complaint.[4] Plaintiffs, on behalf of Class A, entered into a settlement agreement with Meadows on May 10, 1996.[5] Thus, only Counts II and III remain, against SAI.

Plaintiffs' Amended Motion for Class Certification Against SAI was denied by this Court on June 17, 1996. See Ruiz v. Stewart Assocs., Inc., 167 F.R.D. 402 (N.D.Ill.1996). Currently before the Court is Plaintiffs' Second Amended Motion for Class Certification Against SAI. Additionally, before the Court is Defendant's Motion for Summary Judgment on Count III of the Complaint.

## DISCUSSION

### I. SAI's Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is only appropriate if "there is no genuine issue as to any material fact, and . . . the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)). Summary judgment is not appropriate, where there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." County of Vernon v. United States, 933 F.2d 532, 534 (7th Cir.1991); see also Jones v. Banks, 878 F.Supp. 107, 110 (N.D.Ill.1995). In deciding a motion for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Griffin v. Thomas, 929 F.2d 1210, 1212 (7th Cir.1991).

SAI gives three reasons supporting its motion for summary judgment: (1) there is no evidence of the alleged predicate act of mail fraud; 2) Plaintiffs lack standing to assert a RICO claim against SAI; and 3) Plaintiffs' RICO claim is barred by a four year statute of limitations.

First, SAI states that in order to establish mail fraud, Plaintiffs must prove that a misrepresentation was made by SAI and that they relied on that misrepresentation to their detriment. However, detrimental reliance is not an element of a mail fraud action; RICO requires only causation, not

---

2. The second page of Attachment A to Plaintiffs' Second Amended Motion for Class Certification Against SAI ("Second Am.Mot.") appears to be missing from the Court's courtesy copy.

3. Plaintiffs later amended their Complaint to add Count IV, alleging that Meadows violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.

4. Count I was brought on behalf of Class A, Count III was brought on behalf of proposed Class B, and Count II was brought on behalf of both. Although it was not specified, Count IV was brought on behalf of Class A.

5. Class A was provisionally certified for settlement purposes only.

reliance. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *United States v. Biesiadecki*, 933 F.2d 539, 544–45 (7th Cir. 1991). Moreover, it appears that Plaintiffs may have detrimentally relied on SAI's misrepresentations.

■ Second, SAI states that Plaintiffs have no standing to sue under RICO because they cannot establish that they were injured "by reason of" the RICO violation. However, it appears that a genuine issue of fact exists as to the proximate cause of Plaintiffs' injuries. The situation at bar is different than that in *Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). In *Bastian*, the plaintiffs were misled about the defendants' honesty and competency, and invested (and lost) money in the defendants' oil and gas limited partnerships. *Id.* In *Bastian*, it was an intervening act—the sudden collapse of the oil market—that made the plaintiffs' causation element fail. *Id.* at 684. The misrepresentations about the defendants' qualifications had nothing to do with the plaintiffs' loss of money in *Bastian*. Here, however, it is not at all clear what Plaintiffs would have done had SAI been honest about the extra charges. Perhaps Plaintiffs would have done something about it, perhaps not, which is why it remains an issue of fact.

■ Finally, SAI maintains that Plaintiffs' injury occurred more than four years prior to the filing of the lawsuit, and that the cause of action is, therefore, barred by RICO's four year statute of limitations. Plaintiffs agree with SAI, that RICO's statute of limitations began to accrue when they discovered their injuries. However, Plaintiffs disagree that they are time barred here, because the injury was not discovered until well after they had received SAI's first mailing. Plaintiffs persuasively argue that the charges (injury) were fraudulently concealed; therefore, they may not have even discovered the injury until they consulted an attorney, in approximately 1995. Discovery at that date, would put them well within the statute of limitations. Moreover, SAI continued to charge interest and late fees, and those charges, if found to be improper, would be new injuries giving rise to new claims falling within the statute of limitations.

SAI has failed to show that no genuine issue of material fact exists. Nor has SAI shown that they are entitled to judgment as a matter of law. Thus, SAI's motion for summary judgment is denied.

## II. *Plaintiffs' Second Amended Motion for Class Certification*

### A. Standard for Class Certification

■ There is broad judicial discretion in determining whether to allow the certification of a class action. *First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir.1988) (certification decision is committed to the sound discretion of the court); *see also* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1785 (1986) at 119. The burden of showing that the requirements of Rule 23 have been met, thereby demonstrating that certification is proper, rests with the plaintiff. *See General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986).

Rule 23 establishes a two-step procedure to determine whether a class action is appropriate. Initially, the preliminary requirements set forth in Rule 23(a) must be met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If these criteria are satisfied, the Court then considers whether the action falls within one of the three categories of class suits provided for in the subsections of Rule 23(b).[6]

**6.** Here, Plaintiffs seek class certification under Rule 23(b)(3).

## B. Requirements of Rule 23(a)

Putative Class B includes all persons who: purchased a motor vehicle financed through Meadows; ... executed a loan agreement for the purchase of a vehicle on a printed form, substantially similar to *Exhibit A,* that required the borrower insure the vehicle against loss and damage, and allowed the lender, in the event of the borrower's failure to insure the vehicle, to obtain such insurance; ... were charged for force placed insurance pursuant to coverage arranged by SAI; and ... [t]he charge was imposed, remained outstanding, or was paid on or after June 26, 1985.

(Second Am.Mot., at 1–2.)

### 1. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, the number of class members is well over one hundred, in fact, it could exceed fifteen hundred. Plaintiff has shown that the potential class is so numerous that joinder of all members is impracticable. *See In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982) (class action may proceed upon estimates as to size of proposed class; *see also Hispanics United of DuPage County v. Village of Addison, Ill.,* 160 F.R.D. 681, 688 (N.D.Ill.1995) (quoting *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988), court is "entitled to make common sense assumptions" in determining numerosity); *Riordan,* 113 F.R.D. at 62 (approximately twenty-nine members sufficient for numerosity).

### 2. *Commonality*

Rule 23(a)(2) requires that there exist "questions of law or fact common to the class". A "common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); *see also Meiresonne v. Marriott Corp.,* 124 F.R.D. 619, 622 (N.D.Ill. 1989) ("Commonality is not a demanding requirement: It calls only for the existence of at least one issue of fact or law common to all class members....."). Plaintiffs' allegations involve numerous common questions of law and fact regarding SAI's standardized conduct toward members of the proposed class. *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984) (where question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met."). Clearly, SAI engaged in a common course of conduct by the very act of charging potential class members' accounts for insurance premiums. Thus, it is obvious that common questions of law and fact exist.

### 3. *Typicality*

■ Rule 23(a)(3) requires that the "claims or defenses of the representative parties" be "typical of the claims or defenses of the class." The question of typicality is closely related to the question of commonality. *Rosario,* 963 F.2d at 1018. A class representative's claim is typical " 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members' " and if his " 'claims are based on the same legal theory.' " *Id.* (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). For typicality, the representatives' claims need not be identical to the class members'; rather, it is sufficient if they are substantially similar. *See Binion v. Metropolitan Pier and Exposition Auth.,* 163 F.R.D. 517, 525 (N.D.Ill.1995).

As discussed above, Plaintiffs' claims arise from the same practice or course of conduct giving rise to claims of other potential class members. In fact, Plaintiffs share with proposed class members very similar issues relating to SAI's standardized conduct towards them. Therefore, it is apparent that Plaintiffs' claims are typical of the claims of others who would be in the class.

### 4. *Adequacy of Representation*

■ Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class". Adequate representation has two components: (1) adequacy of the named plaintiff and (2) adequacy of the

named plaintiff's attorney. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993), *cert. denied,* —— U.S. ——, 117 S.Ct. 305, 136 L.Ed.2d 222 (1996).

■ The named plaintiff must not have interests that are antagonistic to, or conflict with, those of the class. *Rosario,* 963 F.2d at 1018. There are no apparent conflicts between Plaintiffs' interests and the interests of any other potential class member. Therefore, the Court finds Plaintiffs to be an adequate representatives.

The representative attorney must be "competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 309 (N.D.Ill.1995). Plaintiff's counsel, Edelman & Combs, are experienced in the area of class actions. A number of courts have found Edelman & Combs to be adequate representatives. *See Avila v. Van Ru Credit Corp.,* No. 94 C 3234, 1995 WL 41425, at *9 (N.D.Ill. Jan. 31, 1995) (finding Edelman & Combs to be adequate class counsel and noting that "Edelman & Combs have been found to be adequate class counsel in at least 22 cases in 1994"). Lead attorney, Daniel Edelman, has been practicing law for approximately twenty years in the area of consumer class action litigation, and has co-authored a class action manual for the National Consumer Law Center. The Court finds that Edelman & Combs are experienced, competent, qualified and able to conduct the proposed litigation vigorously.

## C. Requirements of Rule 23(b)

The threshold requirements of Rule 23(a) have been satisfied, thus, the analysis moves to Rule 23(b)(3)'s requirements that the questions of law or fact common to all class members "predominate" over questions pertaining to individual members *and* that a class action is "superior" to other available methods of adjudicating the controversy.

This Court has already found that common questions of law and fact exist. Moreover, it is apparent, from SAI's standardized conduct, that such common issues will predominate. Though the amount of damages may differ among proposed class members, that potential variation does not overcome the predominance of common questions established here.

■ The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of settling the controversy. 7A WRIGHT, MILLER & KANE, *supra* § 1779. This Court has considered the interests of the proposed class members in pursuing separate claims. It is highly improbable that the majority of the potential class members would "possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir.1974). Further, the ability to have their claims adjudicated in a single lawsuit is especially important where, as here, many small and medium sized claimants may be involved. *In re Folding Carton Antitrust Litig.,* 75 F.R.D. 727, 732 (N.D.Ill.1977) ("In light of the awesome costs of discovery and trial, many ... would not be able to secure relief if class certification were denied...."). Finally, the underlying factual allegations in this case, strongly favor class action resolution.

### *CONCLUSION*

SAI has failed to show that summary judgment, as to Count III is appropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on Count III of the Complaint be, and the same hereby is, **DENIED.**

Additionally, Plaintiffs have fulfilled all the requirements for a class certification under Federal Rule of Civil Procedure 23.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Amended Motion for Class Certification Against SAI be, and the same hereby is, **GRANTED.**