Paul E. LUCAS, Sr., and Ruby
M. Lucas, Plaintiffs,

v.

GC SERVICES L.P.; DLS Enterprises,
Inc., and GC Financial Corporation,
Defendants.

No. 2:03–CV–498 PS.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 15, 2005.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Tara L. Goodwin, Edelman Combs & Latturner LLC, Chicago, IL, for Plaintiffs.

David M. Schultz, Hinshaw and Culbertson, Chicago, IL, Renee J. Mortimer, Hinshaw and Culbertson, Schererville, IN, for Defendants.

## ORDER

SIMON, District Judge.

This matter is currently before the Court on the Motion of Plaintiffs Paul E. Lucas and Ruby M. Lucas's Renewed Motion For Class Certification pursuant to Federal Rule of Civil Procedure 23. [Doc. 40]. Because Plaintiffs have sufficiently demonstrated the requirements of Rule 23, their Renewed Motion for Class Certification is **GRANTED**.

## BACKGROUND

This lawsuit arises out of two letters (the "dunning letters") that Defendant GC Services sent to Plaintiffs in an effort to collect outstanding credit card debts. Ruby Lucas received one dunning letter with respect to her credit card debt and Paul Lucas received one dunning letter with respect to his credit card debt.

GC Services is one of the largest debt collectors in the United States responsible for collecting "billions of dollars in delinquent accounts every year." (See GC Services Brochure, *available at* http://www.gcserv.com/assets/brochure-Corp.pdf). Indeed, GC Services' literature boasts that it "generates and processes millions of collection letters monthly." (*Id.*). The letters sent to Plaintiffs were standard form letters used by GC Services as initial demand letters. (*See* Judge Rodovich's November 3, 2004 order deeming certain facts admitted as discovery sanction).

Plaintiffs first complain that the form of the letters tends to overshadow the purpose of the letters. The letters are form letters, identical in most respects. Each letter is double-sided. According to Plaintiffs, the front side of the letter—the side actually describing the specific debt to be collected—is easy to read and includes such conventions as bright colors, black print against white background, standard capitalization, paragraphs separated by spaces, short sentences, and a "friendly" layout.

In contrast, Plaintiffs characterize the back of the letter—the portion specifically dealing with the requirements of the FDCPA—as difficult to read citing dull colored text against a dull background, excessive capitalization, a cluttered page, full justification, wide margins, sans serif type, low space between lines, and an overall appearance of "three bricks of gray." As a result, Plaintiffs contend that the form of the letters overshadows their messages and serve only to confuse the recipient.

Further, Plaintiffs claim that the letter violates the FDCPA because it states that the debt "has been referred to us for our expedited attention," and that "[t]o avoid further collection activity, please send us your payment in full in the enclosed envelope." Plaintiffs claim that this violates the

FDCPA's provision relating to debt verification.

Plaintiffs' Amended Complaint also contains a series of factual allegations for class certification. Plaintiffs identify two separate classes—one for each count of the complaint. They define the Count I class as:

> (a) all natural persons with Indiana addresses (b) who were sent an initial demand letter with the § 1692g verification notice in gray print on the reverse of the letter, in all caps, with 2 point leading, where the front of the letter has colors, the print is black print, and is in standard sentence capitalization (c) between November 19, 2002 and December 9, 2003.

Plaintiffs then allege (a) that, upon information and belief, the Count I class exceeds 50 people; (b) that a common question of law and fact—whether the artful drafting form represented by their dunning letters (attached as Exhibits A and B to the Amended Complaint) violates the FDCPA—predominates over any individual questions; (c) that Plaintiffs' claims are typical of the class claims; and (d) that Plaintiffs will fairly and adequately represent the interest of the class.

> The Plaintiffs define the Count II class as: all (a) members of the class in Count I(b) who were sent letters that state that the debt "has been referred to us for our expedited attention," and that "[t]o avoid further collection activity, please send us your payment in full in the enclosed envelope".

Plaintiffs then reiterate the Count I class allegations in Count II except that they define the common question of law and fact as whether the phrases used in the form letters represented by the Plaintiffs' dunning letters violate the FDCPA. For both counts, Plaintiffs also allege that a class action is superior to other methods of adjudicating the dispute because they claim that individual cases "are not economically feasible."

## DISCUSSION

Motions for class certification must meet the requirements set under Rule 23 of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 23. The Seventh Circuit insists that Courts should expeditiously decide motions for class certification. *Chavez v. Illinois State Police*, 251 F.3d 612, 630 (7th Cir.2001). Rule 23 establishes two main requirements for class certification. First, the action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation. Second, the proposed class must satisfy at least one of the three provisions under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Plaintiffs seek certification under Rule 23(b)(3), which requires them to demonstrate that common questions of law or fact predominate over any questions affecting only individual class members and that a class action is a superior method of adjudicating the controversy.

The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are satisfied. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). Failure on the part of the movant to satisfy any one of the requirements of Rule 23(a) or (b) precludes class certification. *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980). The court has broad discretion in ruling on a motion for class certification. *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

For purposes of a motion to certify a class, the court does not reach the merits of the complaint. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotations omitted). However, the Seventh Circuit has instructed the district courts to make "whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir.2001).

### Numerosity

■ Rule 23(a)(1) requires that the class must be "so numerous that joinder of all

members is impracticable." Fed.R.Civ.P. 23(a)(1). Because there is no mystical number at which the numerosity requirement is established, courts have found this element satisfied when the putative class consists of fewer than 40 members. *Ingram v. Corporate Receivables*, 2003 WL 21982152 at *2 (N.D.Ill.2003) (citing *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.1969)); *see also, e.g., Markham v. White*, 171 F.R.D. 217, 221 (N.D.Ill.1997) (35–40 class members); *Hendricks–Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D.Ill. 1996) (38 class members). The exact number of class members need not be known. *Ingram*, 2003 WL 21982152 at *2. Instead, the plaintiff can offer "good faith estimates of class size ... and the court may use 'common sense assumptions' to determine the validity of those estimates." *Id.; Cannon v. Nationwide Acceptance Corp.*, 1997 WL 139472, at *2 (N.D.Ill. March 25, 1997) (quoting *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.1983)); *Long v. Thornton Township High Sch. Dist.*, 82 F.R.D. 186, 189 (N.D.Ill.1979).

Courts have found that it is reasonable to assume the number of potential class members satisfies the numerosity requirement when the defendant allegedly used "preprinted, standardized debt collection letters in attempting to collect on the [allegedly delinquent] debt." *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, et al.*, 2001 WL 1543516, at *3 (N.D.Ill. Nov.30, 2001) (citing *Peters v. AT & T*, 179 F.R.D. 564, 567–68 (N.D.Ill.1998) ("Based on these facts it is reasonable to infer that many individuals received the form collection letter and that joinder of all the individuals would be impracticable.")). Courts have also used their ability to make reasonable inferences to infer numerosity based on the size of a company. *Ingram*, 2003 WL 21982152 at *2. In *Ingram*, the court stated that numerosity was met because it was reasonable to infer that at least forty collection letters were sent based on the size of the collection agency. *Id.* Furthermore, the court stated that their assumption was strengthened by the fact that the company in that case did not offer any evidence to the contrary. *Id.*

In this case, GC Services admits that the letters Plaintiffs received were form letters and carry form numbers to distinguish them as such. Further, according to its own website, GC Services generates millions of collection letters monthly. Given that Indiana comprises approximately 2% of the national population, *see* UNITED STATES CENSUS BUREAU, STATE & COUNTY QUICK FACTS, *available at* http:quickfacts.census.gov/qfd/states/18000.html, it is reasonable to assume that at least 40, if not significantly more, of the millions of form letters generated each month by GC Services meet the parameters set for in plaintiffs' proposed class.

### Commonality

█ Under Rule 23(a)(2), "questions of law or fact common to the class" must be present before a class may be certified. The existence of a common nucleus of operative facts is usually enough to establish commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). Courts consistently have found a common nucleus of operative facts if a defendant has allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents. *Rosario*, 963 F.2d at 1018; *Johnson v. Aronson Furniture Co.*, 1998 WL 641342, at *3 (N.D.Ill. Sept.11, 1998); *Peterson v. H & R Block Tax Serv. Inc.*, 174 F.R.D. 78, 82 (N.D.Ill.1997). A plaintiff normally is only required to show that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D.Ill.1996). When a "question of law refers to a standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met." *Moore v. Simpson*, 1997 WL 570769, at *3 (N.D.Ill. Sept.10, 1997) (internal quotations omitted); *see also Rosario*, 963 F.2d at 1018 ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2).").

Plaintiffs have satisfied the requirements of Rule 23(a)(2). Count I involves the specific question, common among the class, regard-

ing whether the Defendant's form letter violates the FDCPA, by using techniques which make the reverse of the letter difficult to read and overshadow the required validation notice. This common question also pertains to whether the letter was (a) intended to be difficult or impossible to read or (b) whether the letter was in fact difficult or impossible to read. A specific question, common among the class, also exists as to Count II: whether the Defendant's form letter violates the FDCPA by including language that allegedly purports to suggest that full payment is required in order to avoid further action in the collection process.

Despite the obvious common threads in Counts I and II, Defendants attempt to argue that Plaintiffs cannot prove commonality. First, they contend that Plaintiffs cannot demonstrate commonality as to Count I because, according to defendants, Plaintiffs' claims hinge upon the relative degree of faintness of the print found on the letter they received. This argument misconstrues Plaintiffs claim. At oral argument, Plaintiffs stated that they do not claim that the letter they received was improperly printed or that it contained faded black ink. Instead, they are claiming that the form letter they received contained excessive capitalization, a cluttered page, full justification, wide margins, sans serif type, low space between lines, and dark grey ink printed on a light grey background resulting in overall appearance of "three bricks of grey." Further, Defendants' argument conveniently ignores the fact that Plaintiffs' letters are admitted to be *form letters*. That is, they are all the same. Finally, although Defendants do not specifically argue lack of commonality as to Count II, such an argument would surely fail for the same reasons—as a form letter, all of the class letters would contain language suggesting that payment is immediately due.

Accordingly, because the claims arise from the Defendants' standardized conduct—both in sending of the form letters and the standardized documents themselves—the commonality requirement has been met.

### Typicality

■ Under Rule 23(a)(3), the claims or defenses of the party representative must be typical of those of the class as a whole. The claim of a named plaintiff is typical of the class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Johnson v. Aronson Furniture Co.*, 1998 WL 641342, at * 3, (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). The typicality requirement is closely related to the commonality requirement under Rule 23(a)(2). *Rosario*, 963 F.2d at 1018.

In this case, each of the class members were sent the same or similar collection letter by GC Services. Once again, GC Services assumption that letters received by class members are different from those received by Plaintiffs must fail because the letters are admitted to be form letters. All of the class members' claims arise from the same practice of GC Services which gave rise to Plaintiffs' claims, that is each time Defendants sent a collection letter similar to that received by Plaintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory.

### Adequacy

■ Under Rule 23(a)(4), the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff must be able to zealously represent and advocate on behalf of the class as a whole. *Retired Chicago Police Ass'n. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). As the class representative, a plaintiff must not have "antagonistic or conflicting claims with other members of the class," and they must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D.Ill.1999) (citation omitted). Counsel for the named plaintiff must be experienced and qualified and generally be able to conduct the litigation. *Id.* at 598; *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D.Ill.1995).

Here, we find no evidence in the record that Plaintiffs' claims conflict or are antagonistic to the claims of the proposed class members. All members in this class received and are challenging the legality of the form letter issued by GC Services, based on the overshadowing of the validation notice as well as confusing language in the body of the letter. The Court further finds that the plaintiffs have a sufficient stake in the outcome of the litigation to ensure that they will be zealous advocates on behalf of the class. In addition, Counsel for the named plaintiffs in this case are experienced in handling class action lawsuits regarding fair debt collection practices and have competently handled at least one case before the undersigned in the past. Thus, the adequacy of representation requirement under Rule 23(a)(4) has been met.

### Requirements of Federal Rules of Civil Procedure 23(b)(3)

In addition to meeting class certification requirements under Rule 23(a), Plaintiffs' proposed class must satisfy the requirements of one of the three subsections of Rule 23(b). Here, Plaintiffs propose that certification is appropriate under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Szabo* 249 F.3d at 676 (7th Cir. 2001); *Kremnitzer v. Cabrera & Rephen, P.C.,* 202 F.R.D. 239, 242 (N.D.Ill.2001).

### Predominance of class issues over individual issues

■ Under the predominance requirement of Rule 23(b), common questions of law or fact must predominate, but they need not be exclusive. *Scholes v. Moore,* 150 F.R.D. 133, 138 (N.D.Ill.1993). In determining whether common questions predominate, the Court looks to whether there is a "common nucleus of operative facts." *Ziemack v. Centel Corp.,* 163 F.R.D. 530, 535 (N.D.Ill.1995).

In this action the predominant questions pertains to 1) the legality of the form letter and whether the validation notice on the back side of the form letter is overshadowed by the defendants use of light grey ink, sans serif font, all capitals, lack of open space or margins, and low leadings and 2) whether specific language used within the form letter was confusing. This standardized form letter is at the core of the Plaintiffs' complaint. The issues of law and fact that flow from GC Services' form letter predominate over any individual issue. Because the common issues of fact and law previously identified are likely to dominate this Court's attention, common questions of law and fact predominate. *Tatz v. Nanophase Tech. Corp.,* 2003 WL 21372471, at *9 (N.D.Ill. June 13, 2003).

### Superiority of class action for fair and efficient adjudication of the controversy

■ Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo,* 249 F.3d at 676. The Court finds that a class action in this case is superior to other means of adjudication for two reasons. First, as discussed previously, this conflict contains a set of legal and factual issues that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. *Tatz. v. Nanophase Technologies Corp.,* 2003 WL 21372471, *9 (N.D.Ill.2003). Denial of the motion for class certification would potentially result in courts becoming consumed with many individual cases that seek to litigate an essential core of the same legal and factual issues.

Second, a class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited. Thus, recipients of the letter are unlikely to prosecute individual claims without the availability of cost-sharing efficiencies of a class action. *Tatz,* 2003 WL 21372471, at *10 (citing *Haynes v. Logan Furniture Mart. Inc.,* 503 F.2d 1161, 1164–65 (7th Cir. 1974)). Furthermore, many of the persons in this class may be unaware that the form letter sent by GC Services may violate the FDCPA and a class action suit may help them to safeguard their rights. Public policy encourages that cases of this type proceed as

class actions in order to put an end to any illegal activity that may be occurring.

## CONCLUSION

Accordingly, because the Court finds that the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiffs' Renewed Motion for Class Certification [Doc. 40] is hereby **GRANTED**.

**SO ORDERED.**